### CITY OF PHILADELPHIA v. ATLANTIC & P. TEL. CO.

(Circuit Court of Appeals, Third Circuit. May 25, 1900.)

#### No. 2.

1. VALIDITY OF CITY ORDINANCE—LICENSE CHARGES.

Where defendant is contesting the validity of a city ordinance requiring it to pay a license on its poles and wires within the city, on the ground that the amount of the license is unreasonably high, an instruction that the jury must find for the plaintiff if they find the amount reasonable for the purpose of coercing companies to place their wires underground, is properly refused; for it asserts a city's right to impose license charges in excess of all the expenses incurred by reason of the poles and wires.

**2. EVIDENCE—INSTRUCTIONS.**

> The actual cost incurred by a telegraph company in making repairs on notice of defects, and the fact that the wires of companies other than defendant are principally responsible for the additional expense to the city, are of little importance in determining the reasonableness of license charges imposed on those companies; and it is error to refuse instructions to this effect.

**3. EVIDENCE—DIRECTING VERDICT.**

> Where defendant contests the validity of a city ordinance on the ground that the license charges imposed by it are unreasonably high, and the evidence of plaintiff shows large additional expenses incurred by the fire and police bureaus and other branches of the city government by reason of the presence of defendant's poles and overhead wires in the city, and this evidence is not in any way answered by defendant, the court should direct a verdict for plaintiff.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

E. Spencer Miller, for plaintiff in error.
Silas W. Pettit, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This was an action brought by the city of Philadelphia against the Atlantic & Pacific Telegraph Company to recover license charges payable under ordinances of the city enacted January 6, 1881, and March 30, 1883, relating to the maintenance of poles and wires in the streets of the city. The charges imposed by these ordinances are $1 per annum for each pole, and $2.50 per annum for each mile of telegraph or telephone wires strung overhead, and the charges are imposed upon all corporations, firms, and individuals so using the streets. The underlying question here was before this court in the case of City of Philadelphia v. W. U. Tel. Co., 32 C. C. A. 253, 89 Fed. 454, 461, in which the opinion of the court was delivered by Circuit Justice Shiras. It was recognized there as settled that a city may lawfully impose by ordinance such license charges, but subject to the limitation that whether the ordinance is reasonable in respect to the terms and amount of the charges can be judicially inquired into. It was, however, declared by the court that there is a presumption in favor of the validity of such city legislative action, and that the evidence to justify a contrary holding must be clear and convincing. It was there further said that, in determining the question of the validity of such ordinances, a wide latitude should be allowed in the introduction of evidence going beyond the expenses attending direct regulations and oversight; and it was specifically held that testimony to show increase in the force and apparatus of the fire department rendered necessary by the maintenance of such poles and wires is proper to be considered, as well as evidence that extra meetings of the councils were required for the purpose of regulating their erection and maintenance. This court there laid down, as governing this class of cases, these principles, namely:

"Not only is there a presumption in favor of the validity of the action of the legislative body, but the facts upon which that action proceeds are so numerous, and so liable to frequent changes, courts should act cautiously in deal-

ing with such a case, and admit evidence of all facts and circumstances that seem to bear even remotely upon the issue. As was said by the supreme court of Pennsylvania in City of Allentown v. W. U. Tel. Co., 148 Pa. St. 119, 23 Atl. 1070, the amount of the license charges rests with the city councils in the first instance; and it is only when such discretion has been manifestly abused that the courts are justified in interfering."

Upon the trial of the present case the plaintiff put in evidence the ordinances in question, and the returns made by the defendant, showing the number of poles and miles of overhead wire it had maintained in the streets of the city during the years covered by the claim in suit, and rested. Undoubtedly the plaintiff thus made out a prima facie case, under the ruling of this court referred to, and also under the decision of the supreme court of Pennsylvania in the cases of W. U. Tel. Co. v. City of Philadelphia, 12 Atl. 144; City of Allentown v. W. U. Tel. Co., 148 Pa. St. 117, 23 Atl. 1070; Chester City v. Same, 154 Pa. St. 464, 25 Atl. 1134; City of Philadelphia v. American Union Tel. Co., 167 Pa. St. 406, 31 Atl. 628. The first and last of these state cases involved charges the same in kind and in amount as here, and the charges were sustained. To show that the license charges in question were unreasonable, and the ordinances therefore void, the defendant, in answer to the plaintiff's prima facie case, introduced evidence tending to show that the supervision of poles and wires by the city was exercised through its electrical bureau only, and that, measured by the expenditures of that bureau of the city government, the license charges were excessive and unjust. In rebuttal the plaintiff introduced evidence showing that, because of the presence of poles and overhead wires in the streets, and to protect the public from perils incident thereto, the policemen were required to render, and did render, to a considerable extent, additional services, and thereby increased expense was incurred by the police bureau; that the work of extinguishing fires was seriously hindered by the suspended wires, and extra calls for fire engines thereby necessitated, thus imposing upon the fire bureau additional expense; and that the city incurred expense by reason of necessary legislation by city councils in regulating and otherwise governing electric wires overhead in the streets of the city. To all this the defendant offered no counter proofs whatever, and the plaintiff's rebuttal evidence was not contradicted or impeached in any particular.

The jury, under the charge of the court, rendered a verdict, upon which judgment afterwards was entered, for $3,375.35, which is about one-half of the claim in suit. No complaint is here made in respect to the general charge of the court, but the city, the plaintiff in error, complains of the refusal of the court to affirm certain of its points or prayers for instruction, and of the answers made by the court thereto. The assignments of error are:

"(1) In refusing plaintiff's first point for charge, which was as follows: 'The jury must find for the plaintiff.'

"(2) The learned judge erred in refusing plaintiff's second point for charge, which was as follows: 'If the jury find that the ordinance in question in this case may be considered reasonably as having been passed with a view to coercing the companies to place their wires underground, rather than maintain them overhead, in the streets of the city, then the jury must find for the plaintiff in this case for the full amount of its claims, even if the aggregate

of the charges imposed is greater than all the expenses incurred by the municipality because of the presence of the poles and wires.'

"(3) The learned judge erred in refusing plaintiff's fourth point for charge, which was as follows: 'The jury must find for plaintiff for the full amount of its claim.'

"(4) The learned judge erred in refusing plaintiff's sixth point for charge, and in answering the same as follows: Point. 'If the jury believe the testimony offered on behalf of the city to the effect that the police bureau, the fire bureau, and other branches of the city government in addition to the electrical bureau, incur expense as a natural consequence of the presence of the poles and electrical wires overhead in the streets of the city, they must find for the plaintiff in the full amount of its claim. There has been no evidence upon which the jury could find that the increased expenditures by the city for those branches of the government, on account of the extra expense due for the presence of poles and wires, is not sufficient to justify the amounts of the charges.' Answer. 'I refuse the sixth point because it asks the court to decide on the effect of the evidence. It is for the jury, and not for the court, to determine whether the license charge is unreasonable, under all the evidence.'

"(5) The learned judge erred in refusing plaintiff's seventh point for charge, and in answering the same, as follows: Point. 'It is of little importance in this case that the wires of other companies than the Western Union Telegraph Companies are generally at fault for the defects occurring among overhead wires, even if the jury find that this is the case, and that the wires of the Atlantic & Pacific Company have not been the origin of any trouble. The city of Philadelphia is justified in imposing a general charge upon all companies maintaining poles and overhead wires, to repay the aggregate charges which the city may be at because of the general expenses imposed upon it by the presence of all such poles and wires.' Answer. 'I refuse the seventh point as a whole. The scope of the instruction asked is too broad, especially in the second sentence.'

"(6) The court erred in not affirming and in answering as follows plaintiff's eight point for charge: Point. 'The cost to the Western Union Telegraph Company of such works as the company may be in the habit of doing, upon its poles and wires throughout the district in which Philadelphia is situated, or throughout the city of Philadelphia, has little bearing upon the question of the proper amount of license charges to be imposed by the city. If the jury find that the city authorities do provide for the patrolling of the street, the proper charges therefor cannot be gauged by the cost to the company of repairing its wires on notice of defects having occurred.' Answer. 'I answer that as follows: The cost of inspection. whether by the company or by the city, is one item to be considered by the jury, and the jury must decide what weight should be given to the evidence upon this subject.'"

Before taking up the first, third, and fourth assignments, which go to the root of the case, we will briefly consider the other assignments. We are not prepared to say that the court erred in refusing the plaintiff's second point. That proposition, it will be perceived, does not touch the right of the city, by direct legislation, to compel all private persons and corporations to place their wires underground, but asserts the right of the city to impose license charges in excess of all the expenses incurred by the municipality because of the presence of poles and overhead wires in the streets, although they are lawfully there. We are not convinced that the decisions cited in support of this assignment are applicable here. At any rate, in disposing of this case it is our purpose to follow and keep within the principles laid down by this court in the case of City of Philadelphia v. W. U. Tel. Co., supra. The plaintiff's seventh and eighth points, we think, are within those principles, and should have been affirmed. The license charges must be uniform as to all such users of the streets, and fixed with reference to the general aggregate amount of expenses

102 F.—17

to the city resulting from the presence of all the poles and overhead wires; and we are not able to see that the charges by the city for patrolling the streets are to be measured by the cost to the defendant of repairing its wires on notice of defects having occurred.

The first, third, and fourth assignments may be considered together. The plaintiff's sixth point, as we have seen, requested an instruction to the effect that if the jury believed the evidence introduced by the plaintiff that the police bureau and fire bureau, and other branches of the city government besides the electrical bureau, incurred expenses as a natural consequence of the presence of poles and electrical overhead wires in the streets of the city, the verdict should be for the plaintiff for the full amount of the claim; the point adding, as ground for such instruction, that there was no evidence in the case upon which the jury could find that the increased expenditures by the city for those branches of the government on account of the extra expense due to the presence of poles and wires is not sufficient to justify the amounts of the charges. There was abundant evidence to warrant the presentation of this point, and we think it should have been affirmed. The defendant's case rested wholly upon its alleged showing that, measured by the services and expenses of the electrical bureau only, the license charges were excessive. The evidence as to the services rendered and the expenses incurred by other branches of the city government because of the presence of the poles and suspended wires came, indeed, from the plaintiff in rebuttal. It was, however, uncontradicted, and therefore the jury was not at liberty to disregard it. The burden of proof here was upon the defendant from first to last. It must be borne in mind that a strong presumption exists in favor of the validity of these ordinances. To quote the language of Judge Shiras in speaking for this court in the former case:

"The amount of the license charges rests with the city councils in the first instance, and it is only where such discretion has been manifestly abused that the courts are justified in interfering."

Having regard to the entire evidence, it cannot, we think, be affirmed that in the passage of the ordinance in question there was manifest abuse of legislative discretion by the city councils. The evidence here did not warrant such a finding by the jury. These views, of course, require us to say, not only that the court should have affirmed the plaintiff's sixth point, but also the plaintiff's first and fourth points.

It is no small satisfaction to us that our conclusion is in harmony with the views of the supreme court of Pennsylvania as expressed in the cases above cited. Although the decisions there may not be conclusive upon us, yet agreement between the federal and state courts upon such a question as that involved here is most desirable. Burgess v Seligman, 107 U. S. 20, 34, 2 Sup. Ct. 10, 27 L. Ed. 359; O'Brien v. Wheelock, 37 C. C. A. 309, 95 Fed. 883. The judgment of the circuit court is reversed, and the case is remanded to that court, with directions to award a new trial.