VOL. 49, JANUARY TERM, 1905.        161

City of Pensacola v. South. Bell Tel. Co.—Syllabus.

THE CITY OF PENSACOLA, A MUNICIPAL CORPORATION, UNDER THE LAWS OF FLORIDA, PLAINTIFF IN ERROR, V. THE SOUTHERN BELL TELEPHONE COMPANY, A CORPORATION UNDER THE LAWS OF NEW YORK, DEFENDANT IN ERROR.

1.  A declaration alleging in substance that an ordinance was adopted by the city of Pensacola providing that telephone companies using the streets for its poles and wires should pay two dollars annually per pole to the city, and that the defendant, a telephone company, was so using the streets, but refused to pay the said sum, is not obnoxious to demurer (a) because the declaration does not show that the city had authority to rent the streets, or (b) because it does not allege that the pole rental was reasonable in amount.

2.  Under the statute laws providing a provisional government for municipalities, a city which is given a provisional form of government can only act on the passage of ordinances as provided by the statute so as to bind the city by contract, and where a resolution is adopted by the board of commissioners, the president of said board being present and assenting to such resolution, and signing and approving the minutes of the meeting, but the said resolution was not after its adoption submitted to the president of the board in his capacity as mayor, for his consideration as such mayor, and for his rejection or approval thereof as mayor as required by law, such resolution was not adopted in the manner provided for the adoption of ordinances.

3.  A plea which in substance sets up that while the city of Pensacola was under a provisional government as provided by statute, a resolution was adopted by the board of commissioners, the president of the board presiding at the meeting at which the resolution was adopted, and consenting to such adoption, and signing and approving the minutes of the meeting, under which resolution the defendant telephone company erected its poles and stretched its wires in the streets, and which provided that the city

11 S C

might use the poles for its fire alarm system, of which privilege the city availed itself, and was thereby estopped from enforcing an ordinance subsequently adopted providing a charge of two dollars per pole annually for the use of the streets by the telephone company, does not set up a good defense to an action by the city to recover the amount due under the ordinance.

This case was decided by Division B.

Writ of Error to the Circuit Court for Escambia County.

### STATEMENT.

The plaintiff in error sued the defendant in error in the Circuit Court of Escambia County and filed the following declaration, omitting the caption: "The plaintiff by its attorney, John B. Jones, sues the defendant: 1. Because the plaintiff is, and has been for more than twenty years last past, a municipal corporation of the State of Florida, located in the county of Escambia in said State, and the defendant is, and has been for more than two years last past, a corporation doing business as a telephone company in said city, and during the year 1899 and up to the 1st day of January, 1900, in the prosecution of said business, had in operation lines of telephone wire in and over the streets, alleys and other public places of said city for the transmission of intelligence, and for the support of said wires has, and continued to have during said time, 519 poles erected and used in said streets, alleys and other public places; that on November 8th, 1893, the board of aldermen of said city passed, and the mayor thereof approved an ordinance (a copy of which is hereto attached, marked 'Exhibit A'

and made a part hereof), ordaining that all telephone companies operating or erecting lines of wire in or over the streets, alleys or other public places of said city for the transmission of electricity or intelligence should pay for the use of such streets, alleys or other public places the sum of two dollars per annum for each and every pole erected and used by them in said streets, alleys or other public places of said city, and ordaining that said charges were due and payable on the first day of January of each and every year, and should be based upon the highest number of poles erected or used by such corporation for the year then ending; that the provisions of said ordinances were incorporated into the subsequent codes of ordinances of said city, to-wit: in the code of ordinances of 1895 as sections 100 and 101, and in the code of 1898 as sections 102 and 103, and remaining in full force and effect during the year 1899 and up to the present time; that before the institution of this suit the plaintiff made demand upon the defendant for the payment of rent for the poles erected or used by it in the streets, alleys and other public places of the said city, as aforesaid, at the rate of two dollars per pole per annum, but the said defendant wholly failed to pay the same, and refuses so to do. To the damage of the plaintiff in the sum of fifteen hundred dollars ($1,500) whereupon it sues.

JNO. B. JONES,
Attorney for the City of Pensacola.

October 1, 1900.

## BILL OF PARTICULARS.

Pensacola, Fla., January 1st, 1900.

The Southern Bell Telephone & Telegraph Company,
            To City of Pensacola,                         Dr.

For pole rental from January 1st, 1899 to January 1st, 1900, 519 telephone poles at $2. per
pole ......... ...... ...................$1038.00

'Exhibit A.'

## AN ORDINANCE.

Entitled an ordinance fixing a charge upon telegraph, telephone and electric light and power companies, and all other persons, or corporations erecting or operating lines of wire on poles in or over the streets, alleys and other public places, of the municipality of Pensacola, for the transmission of intelligence, light or power.

Be it ordained by the mayor and commissioners of the provisional municipality of Pensacola, Florida:

Section 1. That all telegraph, telephone, railroad and electric light and power companies, and all other persons or corporations which may now be operating or erecting, or which may hereafter operate or erect lines of wire in or over the streets, alleys and other public places of this municipality for the transmission of intelligence, light or power shall pay for the use of such streets, alleys and other public places, the sum of two dollars per annum, for each and every pole erected or used by them respectively in said streets, alleys and other public places of this municipality.

Section 2. Said charge shall be due and payable on the first day of January of each and every year and shall be

based upon the highest number of poles used or erected by any such corporation or person during the twelve months then ending.

Section 3. That all ordinances and parts of ordinances in conflict with the provisions hereof be and the same are hereby repealed.

Passed November 8th, 1893.

(Seal of City of Pensacola) JOHN L. PINNEY, Clerk.
W. E. ANDERSON, Mayor. .

I, F. Glackmeyer, City Clerk of the City of Pensacola, do hereby certify that the above is a true and correct copy of an ordinance on file in my office in the said city of Pensacola, Florida.

F. GLACKMEYER, City Clerk."

To .this declaration the defendant filed the following plea as amended: "The defendant for plea to the first count of the declaration says, that on June 28, 1885, the Governor of the State of Florida approved an act theretofore passed by the Senate and House of Representatives of said State, entitled 'An Act to Dissolve Municipal Corporations under Circumstances therein Stated, and to Provide Provisional Government for Same:' That, thereafter, and before July 9, 1890, under the provisions of said act, the city of Pensacola became a provisional municipality, governed by the officers and exercising the powers provided by said act; that upon application by defendant for a grant of the right to use the streets of the said municipality for the purpose of planting poles therein and stringing wires thereon, for the purpose of furnishing telephone service to the citizens of Pensacola and of the vicinity, the board of commissioners of the said municipality, on July 9, 1890, adopted a resolution, the president of said board being present and assenting to the said resolution,

166        SUPREME COURT OF FLORIDA.

City of Pensacola v. South. Bell Tel. Co.—Statement of Case.

whereby the defendant was granted permission to erect such poles, the consideration of such grant being the erection of said poles and the maintenance of the said system, and the grant of the right by the defendant to the said city to use defendant's poles for the fire alarm system of the said city, as set forth in said resolution; that the president of the said board of commissioners presided at the said meeting of said board at which the said resolution was adopted, and then and there consented to such adoption and signed and approved the minutes of the proceedings of said board, in which said resolution was recorded. A copy of such resolution is hereto attached, marked Exhibit 'A' and made a part hereof; that relying upon the said resolution and the grant therein contained, the defendant has, at large expense to itself, erected a large number of poles upon the streets of said city, strung wires thereon, and increased the number of poles and wires, and enlarges the telephone plant more than three-fold; that, thereafter, the said municipality availed itself of the right stated in said resolution to use the poles for its fire alarm system, and did use, and still continues to use for said purpose many of the defendant's poles erected under and in reliance upon the said resolution, and that the plaintiff is the same municipality as the municipality by which the said resolution was adopted. The defendant avers that the acts and agreements of the defendant and the plaintiff as above set forth constitute a contract between plaintiff and defendant, and that the ordinance sued on is in violation of the obligation thereof, and void. The defendant avers that the acts and agreements of the defendant and the plaintiff, as above set forth, constitute an estoppel against the plaintiff, and pre-

vents it from insisting upon the right to collect   the pole rent sued for in its said declaration.

BLOUNT & BLOUNT,
Attorneys for Defendant.

(Exhibit 'A')

## RESOLUTION.

Be it resolved, That permission be and is hereby granted to the Southern Bell Telephone & Telegraph Company to erect poles in the city of Pensacola for their business, under the supervision of the president;

Resolved, the city shall have the right, at any time,   to use said poles for its fire alarm system, and that permission shall apply to poles heretofore erected in the city by said company, and

Provided, further, that the president shall, whenever he deems it necessary, have the right to cause such poles or any of them to be removed to such places or place as   he thinks best for the public interest.

The above resolution was adopted by the board, July 9th, 1890.

(Copy.)              (Sd.)     E. Y. HEART, Clerk."

The plaintiff demurred to this plea on the ground that the facts set forth therein are not sufficient in law to constitute a defense, and that the said   facts   affirmatively show that they constitute no defense to the cause of   action.   The demurrer was overruled, and plaintiff failing to amend the declaration, judgment was entered for the defendant.   Error is assigned here upon the ruling on the demurrer.

*Jno. B. Jones*, for Plaintiff in Error.

*Hunt Chipley* and *Blount and Blount* for Defendant in Error.

HOCKER, J.  *(After stating the facts.)*

In support of the ruling on the demurrer the defendant in error contends: 1st. That the declaration was bad because (a) it does not show that the city had any authority to rent the streets, alleys and other public places in the city of Pensacola, and, because (b) it does not allege that the pole rental charged in said ordinance (Exhibit "A" of the declaration) was reasonable in amount; and that the demurrer to the plea reached back to these defects in the declaration.

2nd. That the plea in itself was good.

It is not disputed, that the ordinance attached to the declaration as a part of it, marked Exhibit A, was properly adopted, nor that by its terms it applies to all telegraph, telephone and electric light and power companies.

When this ordinance was passed the city of Pensacola was a provisional municipality, acting under the statutes providing for the creation of such municipalities, *viz*: Chapter 3606 laws of 1885; Chap. 3749 laws of 1887; Chap. 3949 laws of 1889, and Chap. 4303 laws of 1893; the last chapter being only applicable to Pensacola, and providing, among other things, that the officers of the provisional municipality shall be a mayor, board of commissioners, etc. Under section 6, Chapter 3606, the officers of provisional municipalities and their inhabitants are vested with all the powers and authority, rights and privileges, and charged with all the duties which are conferred on the alderman and other officers and inhabitants under the general law for the incorporation of cities and towns, approved February, 1869, Chapter 1688, and amendments thereof, and other acts conferring power upon municipal corporations, except as otherwise therein provided, or may be inconsistent therewith; and all or-

VOL. 49, JANUARY TERM, 1905. · 169

City of Pensacola v. South. Bell Tel. Co.—Opinion of Court.

dinances in force remain in force until altered or repeal-
ed. By Chapter 3949, it is provided, that one of the com-
missioners shall annually be elected president, and an-
other president *pro tem.,* to act in the absence of the
president; and also that the president shall be vested with
all the power, and charged with all the duties belonging
to the mayor under said act of February, 1869, Chapter
1688, and the amendments thereof, except as otherwise
provided.

By Section 2, Chapter 1855 laws of 1871, amending the
general law, Chapter 1688, it is provided "that all ordi-
nances passed by the city council shall be submitted be-
fore going into effect to the mayor, or person acting as
such, for his approval. If approved, he will sign same,
when it shall become a law. If disapproved, he will re-
turn the same with his objections in writing to the city
council at their next regular meeting, who will cause the
same to be entered in full upon the record of their pro-
ceedings, and proceed to consider the mayor's objections,
and to act upon the same; and if upon consideration the
city council shall pass the same by a two-thirds vote of
the members present, which vote shall be entered upon the
records and the ordinance or ordinances shall then be-
come a law, the mayor's objection to the contrary not-
withstanding. Any ordinance which shall not be return-
ed to the city council at the next regular meeting of the
council after its passage, the same shall become a law in
like manner as if signed by the mayor or person acting
as such."

By Chapter 3024 laws of 1877, amending certain sec-
tions of the general law of 1869, Chapter 1688, cities are
given power, in section one, to pass all such ordinances
and laws as may be expedient and necessary for the pre-
servation of the public peace and morals, for the suppres-

170        SUPREME COURT OF FLORIDA.

City of Pensacola v. South. Bell Tel. Co.—Opinion of Court.

sion of riots and disorderly assemblies, and for the good
order and government of the city or town," etc.; and by
section two, "to regulate, improve, alter, extend and open
streets, lanes and avenues, to cause  encroachments and
obstructions, decayed buildings and ruins to be removed,"
etc.; and by section three, "to regulate and  control the
grading, construction and repairs of all  streets,  pave-
ments, sidewalks," etc.

The provisional government of Pensacola was abolished
and a charter given it by Chapter 4513, laws of 1895; and
in section 18 thereof it is provided that "the city  council
shall have power to pass for the government of the city,
any ordinance not in conflict with the  constitution of
the United States, the constitution of Florida and stat-
utes thereof;" and it is provided among the general pro-
visions in section 155, that "all ordinances of the  city,
and all statutes now in force, and not in conflict with this
act, shall continue in force until repealed or amended as
now provided by law."

The ordinance marked "Exhibit A" attached to the de-
claration, is attacked on the ground that the declaration
does not show that the city had any authority to rent the
streets, alleys and other public places in the city of Pen-
sacola.  It will be noted that the word "rent" does not
occur in the ordinance.  The companies and others men-
tioned, are required to pay $2 per annum "for each and
every pole erected or used," in the streets, etc.  The solu-
tion of the question presented depends upon the nature of
money payment for the use of poles in the streets. In the
case of St. Louis v. Western Union Tel. Co., 148 U. S. 92,
text 97, 13 Sup. Ct. Rep. 485, a somewhat similar  ordi-
nance was sustained on the ground that inasmuch as the
poles permanently occupied portions of the streets, to the
exclusion of the use of the public of those portions, the

city had authority to impose the charge, and that it was in the nature of rental. The authority of the city to impose such a charge is ably vindicated in the opinion. It is contended, however, that on the petition for rehearing, see St. Louis v. Western Union Tel. Co., 149 U. S. 465, 13 Sup. Ct. Rep. 990, the court sustained the ordinance on the ground that the city of St. Louis was an *"imperium in imperio,"* and exercised ownership and sovereign power over its streets. In our construction of this opinion, while it is true, under its charter, the city of St. Louis is the owner of its streets, still the court derived the power of the city to enact the ordinance from the power to "regulate" the use of the streets. It cites decisions of the Supreme Court of Missouri to the effect that the city had no power to devote streets or public grounds to private use, but the use of the streets for telephone poles was not a private use. We find in the latter decision no recantation of the arguments or opinions expressed in the former, but rather their affirmance in Postal Tel. Cable Co. v. City of Baltimore, 156 U. S. 210, 15 Sup. Ct. Rep. 356. It is shown by these and other decisions of the Supreme Court of the United States, and the Appellate Courts of New York and Pennsylvania, that municipalities which have the power and are charged with the duty of regulating the use of their streets, may impose a reasonable charge in the nature of a rental for the occupation of certain portions of their streets by telegraph and telephone companies, and may also impose a reasonable charge in the enforcement of local governmental supervision, the latter being a police regulation. City of Allentown v. Western Union Telegraph Company, 148 Pa. St. 117, 23 Atl. Rep. 1070; City of Chester v. Philadelphia R. & P. Tel. Co., 148 Pa. St., 120, 23 Atl. Rep. 1070; City of Philadelphia v. Postal Telegraph Cable Co., 67 Hun. 21; City

of Philadelphia v. Western Union Tel. Co., 89 Fed. Rep. 454; City of Philadelphia v. Atlantic & P. Tel. Co., 102 Fed. Rep. 254; Western Union Tel. Co. v. Borough of New Hope, 187 U. S. 419, ...... Sup. Ct. Rep. ......; Atlantic and Pacific Tel. Co. v. Philadelphia, 190 U. S. 160, ...... Sup. Ct. Rep. ......; Postal Tel. Cable Co. v. New Hope, 192 U. S. 55, ...... Sup. Ct. Rep. ....... There is no difference in the application of these principles between telegraph and telephone companies. Joyce on Electric Law, sections 8 and 9. The construction given by the declaration to the ordinance upon which the suit is based will align it under the power to impose a charge for the use and occupation of the streets by the defendant telophone company embraced in the power given the city to regulate its streets.

In the case of Towns v. City of Tallahassee, 11 Fla. 130, it is said: "The courts will not interfere with the municipal regulations of a city unless it is clearly shown that they are not authorized by its charter or are in conflict with the constitution or general laws of the State." The plea does not attack the ordinance on the ground that the charge imposed is unreasonable, and *prima facie* the ordinance is reasonable. St. Louis v. Western Union Tel. Co., *supra;* 21 Am. & Eng. Ency. Law (2nd ed.) 978.

Our next inquiry is, does the plea set up a good defense to the action. The plea sets up an estoppel by reason of an alleged grant, contained in a resolution of the board of commissioners of the city, adopted July 9, 1890, alleging that the president of the board was present and assenting to the said resolution; that he presided at the meeting when the resolution was adopted, consented to its adoption, and signed and approved the minutes of said board in which the resolution was recorded; that the city

availed itself of the right to use the poles for its fire alarm system, and that these acts and agreements constitute a contract between the parties, and that the ordinance contained in the declaration is in violation of the contract.

It will be noticed that the president of the board is vested with all the power and charged with all the duties of mayor under the general laws for the incorporation of cities and towns; that by section 2, Chapter 1855, laws of 1871, amending the general law that all ordinances, after being passed, are to be submitted to the mayor or person acting as such, for his approval. If approved, he signs the same and they become laws. The statute then provides for subsequent proceedings and their effect. The plea undertakes to show a compliance with these provisions, but does not do so. It does not allege that after the resolution was passed it was submitted to the president, acting as mayor, for his approval, nor that it was returned by him to the board with his objections, and was adopted over his veto by a two-thirds vote, or that he retained it and it became a law without his approval. Our general laws make no provision for the passage of resolutions by cities and towns; they only mention ordinances. There is a plain distinction between the functions of an ordinance and a simple resolution not adopted as an ordinance. An ordinance is the mode of expressing the legislative acts of a municipal corporation, and a resolution is an order of a temporary character and of a ministerial nature. 21 Am. & Eng. Ency. Law (2nd ed.) 947; City of Jacksonville v. Ledwith, 26 Fla. 163, text 197, 7 South. Rep. 863. There is no doubt, however, that municipal corporations in this State may, as an incident to their general powers; transact ordinary business of a ministerial or temporary character by resolution. But in the

174     SUPREME COURT OF FLORIDA.

City of Pensacola v. South. Bell Tel. Co.——Opinion of Court.

case at bar. it is contended that the effect of the resolution adopted, and the acts done under it, constitute a contract, binding on the city *indefinitely.*

The defendant in error relies on the case of Woodruff v. Stewart, 63 Ala. 206, where it is said: "When the charter of a municipal corporation requires that every ordinance passed by the board of aldermen shall be signed by the mayor, if approved by him, or if disproved, shall be passed over his veto by a two-thirds vote of a full board, it is not essential to the validity of an ordinance that it shall be signed by the mayor, when it is copied at length in the minutes of the board, which are signed by him, and which show that he voted for it or its passage by the board." Our law, section 2, Chapter 1855, laws of 1871, heretofore quoted, seems to be of similar import to that referred to in the above case, but we do not feel constrained to accept the interpretation there given. It is scarcely consistent with what this court said in City of Jacksonville v. Ledwith, *supra,* and we think is overborne by the weight of reason and authority.

In Whitney v. City of Port Huron, 88 Mich. 268, 50 N. W. Rep. 316, it is held that "where the statute requires the resolutions of a city council to be approved and signed by the mayor, the fact that he, as presiding officer, heard the resolution read, put the motion for its adoption, declared it adopted, and in fact approved it, and signed and approved the journal in which it was entered, does not dispense with his approving the resolution in the manner pointed out in the statute."

To the same effect see State *ex rel.* Faber v. District Court of Dakota County, 41 Minn. 518, 43 N. W. Rep. 389; Graham v. City of Carondelet, 33 Mo. 262, text 268.

We are of opinion that the resolution set up in plea was not adopted with the requirements of the statute as to the

adoption of ordinances, was not a contract between the city and the company, and affords no basis for an estoppel against the enforcement of the ordinance sued on in this case.

The judgment of the court below is reversed, and the cause remanded for further proceedings.

TAYLOR, P. J., and COCKRELL, J., concur.

WHITFIELD, C. J., and SHACKLEFORD, and CARTER, JJ., concur in the opinion.