737 So.2d 1065 (1999)
ALACHUA COUNTY, Appellant,
v.
STATE of Florida, et al., Appellees.
No. 93,344.
Supreme Court of Florida.
May 13, 1999.
Robert L. Nabors, Gregory T. Stewart and Harry F. Chiles of Nabors, Giblin & Nickerson, Tallahassee, Florida; and Robert Livingston IV, Alachua County Associate Counsel, Gainesville, Florida, for Appellant.
Alvin B. Davis, Ron A. Adams, Jeffrey L. Kravetz, and Frank R. Jimenez of Steel, Hector and Davis, LLP, Miami, Florida, and Jean G. Howard, Senior Attorney, Florida Power & Light Company, Miami, Florida, on behalf of Florida Power & Light Company; Sylvia H. Walbolt, Robert W. Pass, F. Townsend Hawkes, and Joseph H. Lang, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, Florida, on behalf of Florida Power Corporation; John H. Haswell of Chandler, Lang & Haswell, P.A., *1066 Gainesville, Florida, and Michelle Hershel, Tallahassee, Florida, on behalf of Florida Electric Cooperatives Association, Inc., for Appellees.
Barbara C. Wingo, Deputy General Counsel and Robert H. Pritchard, Associate General Counsel, Gainesville, Florida, and John A. DeVault, III of Bedell, Dittmar, DeVault, Pillans & Coxe, Jacksonville, Florida, for University of Florida, Appellee/Joinder in Answer Briefs of Florida Power Corporation and Florida Power & Light Company.
Marion J. Radson, City Attorney, and Elizabeth A. Waratuke, Litigation Attorney, Gainesville, Florida, and Frederick B. Karl of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, Florida, on behalf of the City of Gainesville, Florida, Appellee/Intervenor.
Joseph W. Little, Gainesville, Florida, for Howard J. Scharps, Appellee/Intervenor.
William J. Roberts, General Counsel, Tallahassee, Florida, on behalf of Florida Association of Counties; and Susan H. Churuti, Clearwater, Florida, on behalf of Florida Association of County Attorneys, Inc., Amici Curiae.
Carole Joy Barice of Fowler, Barice, Feeney & O'Quinn, P.A., Orlando, Florida, for City of Altamonte Springs, Florida, Amicus Curiae.
SHAW, J.
We have on appeal a decision of the trial court declaring that a proposed bond issue is invalid. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
The trial court's findings of fact are undisputed; they are as follows:
Alachua County commenced this action on August 15, 1997, as a bond validation complaint in case number 97-3088-CA. The revenue source for repayment of the bonds is an Electric Utility Privilege Fee ("Privilege Fee"), imposed by Alachua County Ordinance 97-12, and adopted by the county commission on August 12, 1997....
. . . .
The Alachua County Electric Utility Privilege Fee Ordinance ("Ordinance") imposes a monthly fee on electric utilities for the "privilege" of using county rights-of-way to deliver electricity to consumers in Alachua County. The fee is calculated at 3% of gross revenues generated within the county.... [T]he Ordinance contains a "pass-through" provision, making the Privilege Fee a debt of the electric utility customer to the electric utility. The Ordinance provides for the method by which an electric utility shall bill the Privilege Fee to the customer, and allows an electric utility to retain 1% of the monthly fee paid in return for "collecting and transmitting" the Privilege Fee to the county.
. . . .
As well as imposing the Privilege Fee, the Ordinance provides for the issuance and sale of bonds for the financing of "various capital improvement projects," to be paid by a pledge of the revenue flowing from the Privilege Fee. Subsequent Alachua County resolutions provide that all the proceeds from the Privilege Fee be paid into the general fund "to provide reduction of the County-wide millage rate ..." Alachua County Resolution 97-101 § 2, September 9, 1997. The stated purpose behind this disposition of Privilege Fee proceeds is to lessen what the county perceives to be a "disproportional ad valorem tax burden" on "taxable property owners".... Alachua County Resolution 97-80 § 1, August 12, 1997....
Based on the evidence in the record, the Court finds no material dispute as to the following facts:
1. The Privilege Fee is not related to the extent of use by electric utilities of the county rights-of-way.
2. The Privilege Fee is not related to the reasonable rental value of the land occupied by electric utilities within the county rights-of-way.

*1067 3. The Privilege Fee is not related to Alachua County's costs of regulating the use by electric utilities of the county rights-of-way.
4. The Privilege Fee is not related to the cost of maintaining the portion of county rights-of-way occupied by electric utilities.
5. The Privilege Fee does not represent a bargained-for agreement between Alachua County and any electric utility, but was unilaterally imposed upon the electric utilities by the county.
6. Electric utilities providing electric service to consumers in Alachua County cannot reasonably avoid the Privilege Fee by removing their equipment and facilities from the county rights-of-way.
7. The revenue derived from the imposition of the Privilege Fee is intended to fund general county operations and to reduce the county ad valorem tax millage rate.
The trial court then explained that the "central question in this bond validation proceeding is whether the Privilege Fee is in fact a fee, authorized by Alachua County's home rule powers as a charter county, or whether it is a tax." The Florida Constitution preempts to the State all forms of taxation except ad valorem taxes and those authorized by general law. See Art. VII, §§ 1(a), 9(a), Fla. Const. The trial court noted that "Alachua County has conceded that no general law authorizes it to enact the Privilege Fee"; thus, if the Privilege Fee (or Fee) is a tax, it is unconstitutional and void under Article VII, section 1(a) of the Florida Constitution.
In order to avoid having the Privilege Fee declared an unconstitutional tax, Alachua County argued that the Fee was a reasonable rental fee, a user fee, or a franchise fee. However, the trial court ruled that the Privilege Fee was neither of the above, but rather that the Fee was an unconstitutional tax and that the bond was therefore invalid. We agree.
On appeal, Alachua County restricts its arguments of trial court error to contending that the Fee is a reasonable rental or franchise fee. This Court has held that cities have the power "to impose a charge for the use and occupation of the streets by [a utility company] embraced in the power given to the city to regulate its streets." City of Pensacola v. Southern Bell Tel. Co., 49 Fla. 161, 172, 37 So. 820, 824 (1905). This Court explained that
municipalities which have the power and are charged with the duty of regulating the use of their streets may impose a reasonable charge, in the nature of a rental, for the occupation of certain portions of their streets by telegraph and telephone companies, and may also impose a reasonable charge in the enforcement of local governmental supervision, the latter being a police regulation. City of Allentown v. Western Union Telegraph Company, 148 Pa. 117, 23 Atl. 1070, 33 Am. St. Rep. 820; City of Chester v. Philadelphia, R. & P. Tel. Co., 148 Pa. 120, 23 Atl. 1070; City of Philadelphia v. Postal Telegraph Cable Co., 67 Hun. 21, 21 N.Y.S. 556; City of Philadelphia v. Western Union Tel. Co., 89 Fed. 454, 32 C.C.A. 246; City of Philadelphia v. Atlantic & P. Tel. Co., 102 Fed. 254, 42 C.C.A. 325; Western Union Tel. Co. v. Borough of New Hope, 187 U.S. 419, 23 Sup.Ct. 204, 47 L.Ed. 240; Atlantic & Pacific Tel. Co. v. Philadelphia, 190 U.S. 160, 23 Sup.Ct. 817, 47 L.Ed. 995; Postal Telegraph-Cable Co. v. New Hope, 192 U.S. 55, 24 Sup.Ct. 204, 48 L.Ed. 338.
Id. at 171-72, 37 So. at 823-24 (emphasis added).
In the present case, the Privilege Fee does not constitute a reasonable rental charge. Appellant does not dispute the trial court's factual findings, one of which is that the "Privilege Fee is not related to the reasonable rental value of the land occupied by electric utilities within the county rights-of-way." Thus, Alachua County essentially concedes its argument by failing to contest that there is no nexus between its alleged "reasonable rental charge," Alachua County, Fla. Ordinance *1068 97-12 § 1.02(G) (Aug. 12, 1997), and the rental value of the rights-of way. Furthermore, the cases this Court cited in support of the above principle stand for the proposition that local governments have the authority to require that utilities be licensed pursuant to their police power, and that governments may require a reasonable fee to cover the cost of regulation; however, it is undisputed that the instant fee greatly exceeds the cost of regulation.[1] Thus, the trial court properly determined that the Privilege Fee is not a reasonable rental charge.
Alachua County's argument that the Fee is a valid franchise fee is also unavailing. A franchise is defined as "`a special privilege conferred by the government on individuals or corporations that does not belong to the citizens of a country generally by common right....' When granted, a franchise becomes a property right in the legal sense of the word." City of Mount Dora v. JJ's Mobile Homes, Inc., 579 So.2d 219, 223-24 (Fla. 5th DCA 1991)(quoting 12 Eugene McQuillin, The Law of Municipal Corporations § 34.03 (Rev.3d ed.1990)). Local governments may collect franchise fees from utilities; such fees are not taxes. See City of Plant City v. Mayo, 337 So.2d 966, 973 (Fla. 1976); Santa Rosa County v. Gulf Power Co., 635 So.2d 96, 103 (Fla. 1st DCA 1994). In Plant City, this Court stated that "unlike other governmental levies, the charges here [meaning franchise fees] are bargained for in exchange for specific property rights relinquished by the cities." Id. at 973. In contrast, "a tax is a forced charge or imposition, it operates whether we like it or not and in no sense depends on the will or contract of the one on whom it is imposed." State ex rel. Gulfstream Park Racing Ass'n v. Florida State Racing Comm'n, 70 So.2d 375, 379 (Fla.1953), cited in Santa Rosa County, 635 So.2d at 103.
In the instant case, it is clear that the Privilege Fee is not a franchise fee because the utilities did not bargain for imposition of the Fee. By declining to contest the trial court's factual findings, appellant has conceded that the "Privilege Fee does not represent a bargained-for agreement between Alachua County and any electric utility, but was unilaterally imposed upon the electric utilities by the county." Furthermore, given that the ordinance specifically states that Alachua County was not giving up any property rights in exchange for the Fee, and that the utilities were already operating with the property rights they need to provide electricity leads to the query: Why would a business negotiate a franchise agreement that would allow it to run a business it already has the right to operate, and why would the business do so when the other party expressly states that it will give nothing in exchange for imposition of a fee? Clearly, Alachua County conferred nothing to the utilities and there was no bargained-for exchange upon which a franchise could be found; *1069 rather, Alachua County has attempted to impose a forced charge on the utilities. Thus, the trial court properly ruled that the Privilege Fee is not a franchise fee.
Accordingly, the trial court's order invalidating the bond issue is affirmed.
It is so ordered.
HARDING, C.J., and WELLS, PARIENTE and LEWIS, JJ., concur.
OVERTON, Senior Justice, dissents with an opinion, in which ANSTEAD, J., concurs.
OVERTON, Senior Justice, dissenting.
I dissent because I find that the Alachua County Electric Utility Privilege Fee ordinance imposes the same type of fee as this Court approved as a franchise fee in City of Pensacola v. Southern Bell Telephone Co., 49 Fla. 161, 37 So. 820 (1905). What concerns me is that we actually have given our local governmental entities more constitutional power, rather than less, since that Pensacola decision, which was decided under the 1885 constitutional provisions. Without question, this opinion is now going to be used to challenge every franchise fee agreement in existence. I also believe that many utilities will now refuse to enter into new franchise agreements, and this source of revenue to local governmental entities will in effect be eliminated by this opinion. This opinion may result in a substantial reduction in the revenue that pays for local government services.
ANSTEAD, J., concurs.
NOTES
[1] In City of Chattanooga v. BellSouth Telecommunications, Inc., 1 F.Supp.2d 809 (E.D.Tenn.1998), the trial court examined the city's use of a fee in its analysis of whether an alleged rental (or franchise) fee was indeed a permissible fee or rather an unlawful tax, and stated that the use of the money derived therefrom as general revenue was an indication of the fee being a tax rather than rent. See id. at 814 & n. 3. Here, it is undisputed that the revenue in support of the bond will be deposited in the general revenue fund and used, among other ways, to provide tax relief to ad valorem taxpayers-a uniquely governmental use of funds. Thus, the use of the Fee indicates that it is an unlawful tax. In addition, in City of Pensacola this Court relied on City of St. Louis v. Western Union Tel. Co., 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380 (1893), wherein the United States Supreme Court upheld a municipal fee-which it described as "ren[t]"-for the placement of telephone poles on public land. Id. at 97, 13 S.Ct. 485. The concept of such fees being "rent," however, has recently been criticized as an outdated view that arose over a century ago before the development of modern infrastructures. See BellSouth, 1 F.Supp.2d at 814 n. 3. Likewise, the Court conceptualized the fee as rent absent the vast statutes and regulatory schemes currently in place that affect both the location and cost of providing utilities. Thus, Alachua County's argument that the Fee is rent is unconvincing.