827 So.2d 322 (2002)
FLORIDA POWER CORPORATION, Appellant,
v.
CITY OF WINTER PARK, Florida, Appellee.
Nos. 5D01-2470, 5D02-87.
District Court of Appeal of Florida, Fifth District.
September 19, 2002.
*323 Sylvia H. Walbolt, Robert W. Pass, James Michael Walls, and Joseph H. Lang, Jr., of Carlton Fields, P.A., Tallahassee, and R. Alexander Glenn, Associate General Counsel, Progress Energy Service Co., LLC, St. Petersburg, for Appellant.
Gordon H. Harris, Thomas A. Cloud and Tracy A. Marshall, of Gray, Harris & Robinson, P.A., Orlando, for Appellee.
HARRIS, J.
This case involves an electrical system originally built by the City of Winter Park (appellee herein) and ultimately sold to the predecessor of Florida Power Corporation (appellant herein). That sales agreement and accompanying franchise agreement, as well as all subsequent franchise agreements, contained a "right to buy back" provision and a franchise fee negotiated by the parties, the most recent fee being 6% of gross receipts based on the sale of electricity within the city. When the most recent franchise agreement expired by its terms, renegotiations reached an impasse. Florida Power remained in possession of the city's rights-of-way and continued to operate as though the franchise agreement was still in existence but refused to pay the previously negotiated fee. The City sued seeking an injunction to require Florida Power to pay the fee as a holdover franchisee during the term of protracted negotiations or (as is now the case) arbitration. The trial judge granted the injunction which in effect continues the status quo of the parties' relationship under the previous franchise agreement during this holdover period. We affirm.
Florida Power gives two reasons for reversal: one, since an action for damages is available an injunction is an improper remedy and two, the supreme court in Alachua County v. State, 737 So.2d 1065 (Fla. 1999), held that the unilateral imposition of a fee (since the franchising agreement has expired) charged to a franchisee for the use of public property which fee is unrelated to the cost of maintaining such public property is an unconstitutional tax.[1]
*324 A reading of Alachua convinces us that its result would have been different had the fee charged by the County in fact been based on a previously negotiated fee for the franchise rights agreed to by the parties. In other words, if a franchisee and a governing body agree to a reasonable fee for access to the city's residents and the use of the public property to provide services during the term of the franchise then such fee has not been "unilaterally imposed" and will be enforced during a holdover period in which renegotiation occurs. In this case, Florida Power does not challenge the reasonableness of the franchise fee even during these stalemated negotiations. To interpret Alachua as Florida Power suggests would mean that any franchise fee negotiated by the parties which is not directly related to the cost of providing maintenance to the franchise property is invalid and unenforceable.
The supreme court in City of Pensacola v. Southern Bell Tel. Co., 49 Fla. 161, 37 So. 820, 824 (1905), held:
[M]unicipalities which have the power and are charged with the duty of regulating the use of their streets may impose a reasonable charge in the nature of a rental, for the occupation [of such property].[2]
Thus, the supreme court has analogized the obligations between a franchiser and a franchisee as similar to those in a landlord/tenant relationship. And we believe it immaterial that this dispute arises after the end of the franchise period so long as the franchisee remains in possession of the property with the consent of the franchiser. In a normal landlord/tenant relationship, Florida Power would have become a holdover tenant subject to a claim for double rental. However, as the court stated in Lincoln Oldsmobile, Inc. v. Branch, 574 *325 So.2d 1111 (Fla. 2d DCA 1990), "Absent such a demand [a demand for double rental], or other affirmative action on the part of the landlord, the tenant becomes a tenant at sufferance at the original rent." Id. at 1113. Why should not Florida Power be treated as a holdover franchisee subject to the previously agreed rental as the trial court held? Instead of bringing an eviction action which is a normal landlord alternative, an alternative not available in this case, the City accepted Florida Power as a tenant at sufferance (until a new franchise agreement could be negotiated or arbitration completed) at the original "rent."
An injunction is a proper remedy under the facts of this case. It is clear that the purpose of the injunction is to maintain the bargained-for relationship which existed during the term of the franchise while the parties attempt to negotiate an extension of that agreement or a buyout of the system.
In Precision Tune Auto Care, Inc. v. Radcliff, 731 So.2d 744 (Fla. 4th DCA 1999), the court recalled that "[i]n Burger Chef [Systems Inc. v. Burger Chef of Florida, Inc., 317 So.2d 795 (Fla. 4th DCA 1975) ], we recognized that temporary injunctions can be appropriate in franchise cases in order to preserve the status quo during the ongoing litigation." Id. at 746. In City of Oviedo v. Alafaya Utilities, Inc., 704 So.2d 206 (Fla. 5th DCA 1998), this court upheld an injunction preventing the city from withholding development by its long-time franchisee because the franchisee would not enter into a franchise agreement dictated by the City. We did so over the objections of the City that an injunction was inappropriate because damages were available. We noted that in determining whether damages would be an adequate remedy we should look at the impact that the challenged action, if not enjoined, would have on others. Furthermore, in Dotolo v. Schouten, 426 So.2d 1013 (Fla. 2d DCA 1983), the court held that "[t]he prevention of continuing wrongs is a well recognized basis for injunctive relief, as is the prevention of a multiplicity of suits." Id. at 1015 (citing 29 Fla.Jur.2d Injunctions § 15; 22 Fla.Jur.2d Equity §§ 15, 16).
In this case, by withholding the franchise fee, a fee charged to and collected from its customers, Florida Power is in a position to extort favorable terms from the city. The city's expenses for maintaining its property and regulating the utility continue unabated while the payments of the franchise fee are being withheld. The city must either give in to the demands of Florida Power, impose higher taxes on its citizens, or dip into its reserves to meet costs which should be paid by the users of electricity. As in City of Oviedo, we should look at the possible effect on others of the challenged action sought to be enjoined. General taxpayers should not be required to pay obligations more properly owed by users of the system being regulated. If the franchise fee is subsequently approved and retroactively applied, the user base will almost certainly not be the same because old users will have moved out and new users will have moved in. And all the citizens may suffer if to avoid new taxes or having to dip into reserves the city agrees to a bad deal. In short, an injunction under these circumstances is fair and reasonable (it merely requires Florida Power to pass on to the city the fees collected from the electricity customers) and lawful in that it maintains the status quo during an impasse in negotiations.
We certify conflict with Florida Power Corp. v. Town of Belleair, 27 Fla. L. Weekly D1951, ___ So.2d ___, 2002 WL 1994196 (Fla. 2nd DCA, August 30, 2002).
AFFIRMED.
*326 SHARP, W., J., concurs.
SAWAYA, J., dissents, with opinion.
SAWAYA, J., dissenting.
I respectfully dissent.
The majority analogizes the obligations between a franchiser and franchisee as similar to those in a landlord/tenant relationship and the franchise fee previously agreed to between Florida Power and the City of Winter Park as a rental amount that should be paid by Florida Power as a holdover tenant. In Alachua County v. State, 737 So.2d 1065 (Fla.1999), the court held that local governments may collect franchise fees because they derive from and are part of a bargained-for agreement.[1] The court noted that "[t]he concept of [franchise] fees being `rent,' however, has recently been criticized as an outdated view that arose over a century ago before the development of infrastructures." Id. at 1068 n. 1 (citation omitted). Thus, in my view, I do not think it correct to analogize the expired franchise fee as rent to be paid by Florida Power as a holdover tenant.[2] I think that imposition of the expired franchise fee by the trial court is a tax unconstitutionally imposed on Florida Power. Alachua County.
Governmental entities are certainly empowered to require payment of a reasonable fee to reimburse them for the costs of regulation. Alachua County, 737 So.2d at 1067. However, such charges must be "`related to the reasonable rental value of the land occupied by electric utilities within the county rights-of-way.'" Id. In other words, there must be a nexus between the alleged reasonable rental charge and the rental value of the rights-of-way. Id. In the instant case, Florida Power concedes that it must pay a reasonable rental value for use of the City's rights-of-way and stands ready to do so. However, the City failed to introduce any competent evidence to establish the reasonable rental value of the City's rights-of-way and no nexus between the fee and the reasonable value of the land occupied was shown as required by Alachua County. The trial court merely imposed the six percent franchise fee that was bargained for and made a part of the *327 provisions of the expired 1971 ordinance. I believe this was error.
I am also of the view that the City sought the wrong remedy in the instant case. A temporary injunction may only be entered when the petitioner establishes 1) it has a clear legal right to the relief requested; 2) irreparable harm will otherwise result; and 3) it has no adequate remedy at law. Wilson v. Sandstrom, 317 So.2d 732 (Fla.1975), cert. denied sub nom. Alder v. Sandstrom, 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976); Hall v. City of Orlando, 555 So.2d 963 (Fla. 5th DCA 1990). Irreparable harm cannot be established where there is an adequate remedy at law, and recovery of money damages is certainly an adequate remedy at law. Weinstein v. Aisenberg, 758 So.2d 705 (Fla. 4th DCA), dismissed, 767 So.2d 453 (Fla.2000); Barclays Am. Mortgage Corp. v. Holmes, 595 So.2d 104 (Fla. 5th DCA 1992); see also 3299 N. Fed. Hwy., Inc. v. Board of County Comm'rs of Broward County, 646 So.2d 215 (Fla. 4th DCA 1994). In the instant case, the City's economic loss can be calculated and compensated by an award of damages. In a case directly on point, the Second District Court held in Florida Power Corp. v. Town of Belleair, 27 Fla. L. Weekly D1951, ___ So.2d ___, 2002 WL 1994196 (Fla. 2d DCA Aug. 30, 2002), that an injunction entered on facts very similar to the instant case was error. In reversing the trial court's order granting a temporary injunction in favor of the City of Belleair, the court stated:
Here, the trial court determined that Belleair had "a clear legal right to a temporary injunction to maintain the status quo." We disagree. The trial court was without authority to order FPC to continue paying the franchise fee after the franchise agreement expired. The trial court cannot, by injunction, extend the terms of a contract after its expiration. Sanz v. R.T. Aerospace Corp., 650 So.2d 1057, 1059 (Fla. 3d DCA 1995). Additionally, without the franchise agreement to support the negotiated franchise fee, a 6% flat fee constitutes an illegal tax pursuant to Alachua County v. State, 737 So.2d 1065 (Fla.1999), because it bears no relationship to the actual cost of regulation or maintenance of Belleair's rights-of-way. However, as explained in Alachua County, Belleair does have the authority to charge a reasonable regulatory fee for the use of the rights-of-way, and FPC has conceded that it is obligated to pay such a fee and stands ready to do so.
Id. at D1952,____.
I agree with the court's rationale in Town of Belleair. The problem in the instant case is not that Florida Power is unwilling to pay the reasonable rental value for the use of the City's rights-of-way; rather, the problem is that the City failed to present competent evidence of what the reasonable rental value is. In my view, the appropriate disposition of the instant case is to reverse the mandatory injunction and remand to the trial court to determine the appropriate fee based upon evidence of the value of Florida Power's use of the rights-of-way. Lastly, I believe this court should certify conflict with Town of Belleair.
NOTES
[1] While some of the statements in Alachua County seem appropriate to this case, because of the context in which such statements were made, their relevancy herein is somewhat diminished. In Alachua County, the county was attempting to generate new revenues in face of a limitation on its taxing authority and hoped to justify the new assessment as a franchise fee, or as a follow-up position, as rental of its right-of-way. This new "fee" was unilaterally imposed by ordinance. In our case, however, there is no legitimate concern that a new tax is being imposed. The parties negotiated a franchise agreement which gave Florida Power certain rights and imposed on Florida Power an obligation to pay the city a certain sum for exercising these rights. When the franchise agreement expired by its terms, Florida Power elected to remain in possession and to exercise all of the rights previously conferred by the expired franchise agreement. There is no logical reason to permit Florida Power to continue exercising the rights conferred by the expired franchise agreement during this period of renegotiation and yet relieve it of its accompanying obligations. A continuation of the originally agreed-to fee during this extended period is simply not a new tax.
[2] As stated in the dissent, Alachua County, in a footnote, recognized that some courts have suggested that considering a franchise fee as rental is outdated; even so, the Alachua County case did not overrule City of Pensacola. A franchise fee such as the one involved in this case consists of two components: (a) the right (often exclusive) to provide services to municipal inhabitants for a charge and (b) the right to use public rights of way in order to provide this service. Thus the franchise fee includes a component charge both for permitting the franchisee access to the captive clients and a charge for using the public rights-of-way. In Alachua County, the municipality attempted by ordinance to enact a privilege fee based on the gross revenue generated by the sale of electricity within the county. The principal question in Alachua County was not whether the charge was a fee or rental; the question was whether the charge was a fee (or rental) or a tax. In holding the charge to be a tax, the trial court noted that the charge was not based on a bargained-for agreement between the utility and the county. A bargained-for rental cannot be imposed unilaterally and an implied rental, if such is appropriate, must be shown to be "reasonable". In our case, the parties negotiated their rights and responsibilities and determined the reasonable amount to be charged. The best determination of what is a reasonable charge is what the parties agree to, based on the benefits accorded Florida Power. It would be highly unusual and unfair to permit Florida Power to stay in possession and receive all the benefits of its now expired agreement and yet be absolved of all responsibility assumed by it as a condition justifying its very occupancy.
[1] In Florida Power Corp. v. Town of Belleair, 27 Fla. L. Weekly D1951, ___ So.2d ___, 2002 WL 1994196 (Fla. 2d DCA Aug. 30, 2002), the court held that a franchise fee does not necessarily bear a relationship to the actual cost of regulation and maintenance of the rights-of-way. This is so because when an ordinance is enacted that establishes a franchise fee that has been bargained for by the government and the electric utility, the utility receives rights in exchange for payment of the fee other than the mere use of the government's rights-of-way. For example, the utility receives a long term contract with no guaranteed burdens, additional fees, or challenges to its rights, such as condemning the utility's facilities or taking other actions which would be inconsistent with the utility providing services to the government. Unilateral imposition of the six percent fee on Florida Power after the franchise agreement has expired results in mandatory payment of the fee and deprivation of all of the other bargained-for benefits Florida Power is supposed to receive in exchange for it. On the other hand, the City continues to enjoy all of the benefits of the expired agreement. How can this be fair?
[2] The instant case is not a typical landlord/tenant dispute where the rental agreement expires and the tenant refuses to vacate the premises and remains in possession against the wishes of the landlord. Both Florida Power and the City are involved in negotiations for a new franchise agreement, and there is absolutely no evidence in the record that the City has ever demanded that Florida Power not continue to use the City's rights-of-way. The stumbling block in the negotiations is the City's insistence on a buyback provision as part of the new agreement and Florida Power's refusal to agree to this provision because it is no longer required under Florida law as it was at the time the 1971 agreement was entered into.