GLODT ET AL., RESPONDENTS, v. CITY OF MISSOULA, ET AL., APPELLANTS.

No. 8803.

Submitted January 29, 1948. Decided March 6, 1948.

190 Pac. (2d) 545.

Mr. Fred W. Schilling, City Atty., of Missoula, for appellants. Mr. Schilling argued the cause orally.

Mr. Ralph L. Arnold, of Missoula, for respondents. Mr. Arnold argued the cause orally.

Mr. R. C. Dillavou, City Atty., of Billings, and Messrs. Foot & Aronson, of Kalispell, amici curiae. Mr. Foot argued the cause orally.

MR. JUSTICE GIBSON delivered the opinion of the court.

This action challenges the right of the city of Missoula to install and operate parking meters as an aid in regulating the use of the streets and highways of that city and motor vehicle traffic thereon.

The city, after advertisement and call for bids, entered into a contract for the purchase of 500, more or less, Miller Multiple Coin Parking Meters from the Duncan Meter Corporation at the price of seventy-five dollars per meter, f. o. b. Chicago. The meter company agreed therein to advance all freight, supervision and installation charges, which it is agreed shall not exceed four dollars per meter. The contract provides that the city is obligated to pay for the meters only and solely from the

revenues obtained from their operation; that the city is given the option to purchase the meters during a trial period after they are installed, of one year, with the option to the city at the expiration thereof to renew the agreement for another trial period. The agreement further provides that title to the meters remains in the meter company until full payment therefor is made and that title shall pass to the city at that time. The payments shall be 50% of the net revenues derived from the use and operation of the meters. The city shall deduct from the first revenue received the actual cost of the freight, supervision and installation of the meters and reimburse the meter company therefor, and all receipts and revenues after such reimbursement is made are to be considered as net revenues. The city directs the zones wherein meters are to be installed and controls the operation thereof and collects the revenues therefrom.

The legal effect of the contract is that of a conditional sale. There appears to be no legal objection to the form of the contract or the manner of the purchase of the parking meters.

The respondents are resident citizens, electors and taxpayers of the city of Missoula, and brought the action to enjoin the city from proceeding under its contract of purchase of the meters, to enjoin the installation of the same, and their operation under the provisions of Ordinance 743 of said city, the title of which for the purpose hereof, sufficiently shows its design and scope. The title of the ordinance is as follows:

"An ordinance entitled, 'An ordinance relating to traffic and regulating the use of the streets and highways of the city of Missoula; creating and defining parking meter zones; providing for the designation of individual parking spaces; defining and providing for the installation, operation, and maintenance of parking meters; prescribing parking time limits; requiring deposit of coins for the use of parking meters and parking meter zones and providing for the collection and disposition of such coins; repealing conflicting ordinances; providing for the enforcement thereof; defining offenses and prescribing penalties;

and providing that invalidity of part shall not affect the validity of the remainder; repealing all ordinances and parts of ordinances in conflict herewith.' ''

The charges against the installation and use of the parking meters as set forth in the complaint of respondents are (1) that such installation and use is the granting of a franchise or special privilege without submission of the matter to a vote of the people; (2) that it is a violation of section 26, Article V of the Constitution of Montana, which provides among other prohibitions, that ''The legislative assembly shall not pass local or special laws * * * chartering or licensing ferries or bridges or toll roads, * * *''; (3) that the ordinance providing for the use and operation of the meters is not for the purpose of regulating the use of the streets and the traffic thereon but for the purpose of raising revenue.

The trial court held that the installation and use of the meters constituted a franchise or special privilege to the meter company from which the city buys the meters, and gave, made and entered its judgment that the city be restrained from installing and operating such parking meters within the city until a favorable vote by the resident freeholders of the city approving the proposal of installation of parking meters shall be received. From this judgment. the defendant city and its commissioners appealed.

The provisions of law applicable to the granting of franchises by cities are to be found in sections 5074 to 5077, inclusive, of the Revised Codes of Montana 1935. The statute provides that ''No franchise for any purpose whatsoever shall be granted by any city or town, or by the mayor or city council thereof, to any person or persons, association, or corporation, without first submitting the application therefor to the resident freeholders .whose names shall appear on the city or county tax-roll preceding such election.'' Sec. 5075.

We search the contract of purchase in vain to find any grant of right or privilege to the vendor of the meters. The city determines the location of the installation of the meters;

it controls their use and operation; it collects the revenues therefrom. The vendor receives what is termed a rental for the use of the meters, which applies upon the purchase price thereof. When the price agreed upon is fully paid the title of the vendor under the conditional sale contract ends. The vendor of the appliances has been granted no privilege, special or otherwise, exclusive or in common with others, by virtue of the contract. It is simply the vendor of appliances purchased by the city and to be used by the city in the performance of its duty to regulate the use of the streets and the traffic thereon. It seems hardly required to give a definition of franchise but some analysis of its nature may be proper. A franchise is property. New York Electric Lines Co. v. Empire City Subway Co., 235 U. S. 179, 35 S. Ct. 72, 59 L. Ed. 184, Ann. Cas. 1915A, 906. It is incorporeal and intangible in its nature. 37 C. J. S., Franchises, sec. 8. It does not embrace the property used in connection with the exercise of the franchise. 37 C. J. S., Franchises, sec. 8. It is a special privilege conferred by the government on an individual which does not belong to the citizens generally, as of common right. 37 C. J. S., Franchises, sec. 1.

Parking meters are in use in hundreds of cities in many states. The right to install and use them has been controverted and attacked upon almost every conceivable ground. Of the many cases examined, cited by counsel for the parties and by amici curiae, we find but one which charges the installation and use of the meters under contract like or similar to the one here involved, to be the granting of a franchise, and there the charge was only indirectly made. That is the case of Morris v. City of Salem, Or., 174 Pac. (2d) 192, 195. The court in answer to that charge said:

"The plaintiff suggests that the experimental period provided for in the contract is an unlawful scheme to enable the company to profit through being permitted to use the city streets for the purpose of demonstrating and selling its meters. This argument, if sustained, would have the effect of debarring a municipal corporation from purchasing, subject to approval after due

trial, any street equipment whatever. Title to the meters, it is true, is reserved in the company until they are paid for. The city, however, has full control of their operation and of the collection and disbursement of the income. There is no grant of any easement or privilege in favor of the meter company in respect of the use of the public streets. The argument is patently unsound.''

The word ''franchise'' in the statute, section 5075, Revised ██ ██ Codes 1935, is used in the same sense as it is in the state Constitution, where it is classed as property and is declared to be subject to taxation as such. Secs. 16 and 17, Art. XII, Montana Const. The nature and attributes of a franchise, as the word is used in the Constitution, and in statutes, were fully considered and carefully analyzed by Mr. Justice Holloway in Wells Fargo & Co. v. Harrington, 54 Mont. 235, 169 Pac. 463, 465, who said, ''The Legislature has distinguished the privileges conferred by the government upon the people' generally, from those special privileges conferred upon certain persons, associations, and corporations, and has designated a privilege of the latter class by the term 'franchise.' '' The meter company merely sells to the city the meters and there is no franchise, and no constituent element thereof in the transaction.

The second charge made by the respondents in their complaint ██ ██ plaint is that the installation and use of the meters is a violation of ''Section 26 of Article V (of the Montana Constitution) which prohibits the establishment of toll roads being roads for which a toll or fee is exacted for any use thereof.'' A complete answer to this contention is that the Constitution does not prohibit the establishment of toll roads. Hereinabove we quoted the provision of the Constitution which respondents aver is violated by the use of parking meters. There is no limitation in the Constitution upon the power of the state to establish toll roads or construct toll bridges. But even if the Montana Constitution prohibited the establishment of toll roads, as respondents read it, instead of merely prohibiting the passage of special laws ''chartering or licensing ferries or bridges or toll

roads," as its language is, it would not take from the legislature the power to regulate the use of the highways in the manner proposed to be done by Missoula as to the streets of that city, nor as is being done by other cities of the state to all of which the state has granted from its police power such right and authority.

So far as we have found from the authorities examined, the "toll road" theory of respondents has not heretofore been raised, eo nomine, as an objection to the installation and use of parking meters. The right to exact a fee for the parking privilege was assailed in an Oklahoma case and upon the principle therein involved, meets the "toll road" issue here raised. The statute of Oklahoma, Laws 1919, c. 290, p. 418, sec. 12, provided that "the local authorities of cities, towns and villages of this State, shall have no power to pass, enforce or maintain any ordinance, rules or regulation requiring from any owner of whom this article is applicable any tax, fee, license or permit for the *free use of the public highways* or excluding or prohibiting any motor vehicle registered in compliance with this article * * * from the *free use of the public highways.*" The Oklahoma court had no difficulty in holding that the "free use of the public highways" simply means the ordinary use thereof for travel thereon, including as an incident thereto the right to stop, to take in or let out occupants of the vehicle, or for the purpose of loading or unloading merchandise. The court said "But a clear distinction is made between this use of the street and 'parking,' which is held not to be an incident to public travel." Ex parte Duncan, 179 Okl. 355, 65 Pac. (2d) 1015, 1017. To support this holding the court cited Village of Wonewoc v. Taubert, 203 Wis. 73, 233 N. W. 755, 72 A. L. R. 224; Pugh v. City of Des Moines, 176 Iowa 593; 156 N. W. 892, L. R. A. 1917F, 345. The toll for use of a toll road is for its use in traveling thereon, not for its use as a parking or storage place for vehicles.

A reading of section 5039.6, Revised Codes of Montana 1935, discloses that the incidental charge of respondents that installation of parking meters would constitute a nuisance and

obstruction of the streets, is not tenable thereunder, or at all. The section merely grants the cities power to clean and enforce cleaning of the streets.

The third and last of the definite indictments against the meter purchase contract and the ordinance, is that the plan ''is for the purpose of collecting revenue and not for traffic control.''

This has been urged against the right to regulate traffic by the use of parking meters in numerous cases. In a well considered case in Texas, Harper v. City of Wichita Falls, Tex. Civ. App., 105 S. W. (2d) 743, 755, the court said of this, ''The parking fee charged is not a tax but is a license fee for a privilege not possessed by the citizens, and is properly chargeable for regulatory purposes under the police powers of the city.'' There, as here, there were no allegations in plaintiff's petition that revenues collected were in excess of the expenses required for regulating traffic in the city, and for the installation, inspection, operation, control and use of the meters.

''Ordinances imposing license taxes under the power to regu- late are prima facie valid, and the unreasonableness of the exactions must be made clearly to appear, and they must be obviously and largely beyond what is needed for the purpose intended, before such legislation will be declared void. The fact that the exaction may result in producing a revenue in excess of that required for regulation, does not in itself destroy the regulatory character of a police measure.'' McQuillin on Municipal Corporations, 2nd Ed., Vol. 3, p. 693, par. 1102.

The Supreme Court of Oregon in Hickey v. Riley, 177 Or. 321, 162 Pac. (2d) 371, 377, said: ''We think that it is beyond question that the ordinances were enacted primarily for traffic regulation and not for revenue. The fact that, in the operation of the meters, a revenue has resulted, does not, in itself, classify the ordinances as revenue measures. (Citing cases.) The right to apply the revenue not only to the narrow and restricted purposes of the mere installation, operation and maintenance of the meters, but also to the broad purposes of general traffic control

where authorized by the enabling ordinances, has been upheld in a number of well-reasoned decisions."

The state of Montana has clothed the cities and towns of the state with broad and comprehensive power over the streets and public ways within their limits. Several of the subdivisions of section 5039, Revised Codes 1935, set forth specifically the power and authority that the state, from its reserve of police power, has granted to the cities to enable them to acquire, construct, control and regulate the streets and the use thereof and the traffic thereon.

Like the cities in most other states, by reason of the greatly increased and increasing use of the motor vehicle in transportation and business, Montana cities have been forced to wrestle with the problem of parking in their busy and congested areas. They have in many instances arranged for parking lots and space, and most of the principal cities have resorted to the use of the mechanical device known as the parking meter as an aid in regulating and facilitating traffic upon the streets. In this Montana has but followed the action of other states wherein many cities, larger and more travel-crowded than those here, earlier installed and placed in use these ingenious mechanical devices to help enforce their parking ordinances and speed the traffic on their streets. By reason of this earlier use thereof in other states by many cities of larger population than those here, the legal questions involved in various objections to their use have been, for the most part at least, determined heretofore. This power of the state to regulate the parking of cars on the streets is not in doubt. Kimmel v. City of Spokane, 7 Wash. 2d 372, 109 Pac. (2d) 1069; 2 Berry on Automobiles, 7th Ed., sec. 2.51, p. 44.

There are many cases sustaining the validity of the use of parking meters as an aid in regulating motor vehicle traffic, which has become so serious a problem in the cities of the country. A few of them are: City of Phoenix v. Moore, 57 Ariz. 350, 113 Pac. (2d) 935; State ex rel. Audrain County v. City of Mexico, Mo. Sup., 197 S. W. (2d) 301; Kimmel v. City of Spo-

kane, supra; State ex rel Harkow v. McCarthy, 126 Fla. 433, 171 So. 314; Hendricks v. City of Minneapolis, 207 Minn. 151, 290 N. W. 428; Porter v. City of Paris, 184 Tenn. 555, 201 S. W. (2d) 688; City of Columbus v. Ward, 65 Ohio App. 522, 31 N. E. (2d) 142; Foster's, Inc., v. Boise City, 63 Idaho 201, 118 Pac. (2d) 721; Bowers v. City of Muskegon, 305 Mich. 676, 9 N. W. (2d) 889; Laubach & Sons v. City of Easton, 347 Pa. 542, 32 A. (2d) 881.

Neither the contract for the purchase of parking meters by the city of Missoula, nor the Ordinance 743 of that city providing for their installation and use, nor the plan proposed thereby for traffic regulation, are vulnerable to any of the charges leveled against the same. The judgment appealed from, holding that the contract between the city and the Duncan Motor Corporation and Ordinance 743 of the city of Missoula constitute the granting of a franchise, and enjoining the appellants from proceeding thereunder, is reversed.

Mr. Chief Justice Adair and Associate Justices Choate, Angstman and Metcalf concur.