**CITY OF HAWARDEN, Appellant,**

v.

**US WEST COMMUNICATIONS, INC., Appellee.**

No. 97–544.

Supreme Court of Iowa.

March 24, 1999.

Robert F. Holz, Jr. and Steven L. Nelson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, and David S. Sather of US West Communications, Inc., Denver, Colorado, for appellee.

William F. Sueppel of Meardon, Sueppel, Downer & Hayes, P.L.C., Iowa City, for amicus curiae Iowa League of Cities.

John R. Klaus, Ames, for amicus curiae City of Ames.

Gary N. Jones of Truax & Jones, Cedar Falls, for amicus curiae City of Cedar Falls.

James E. Walsh, Jr., Waterloo, for amicus curiae City of Waterloo.

Eleanor M. Dilkes, Iowa City, for amicus curiae City of Iowa City.

Michael R. May, Des Moines, for amicus curiae Rural Iowa Independent Telephone Association.

Julie A. Smith, Ankeny, for amicus curiae Iowa Association of Municipal Utilities.

Richard W. Lozier, Jr. of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for amicus curiae AT & T Communications of the Midwest, Inc.

James E. Gritzner and Joan Fletcher of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae GTE Midwest Inc.

Robert F. Holz, Jr. and Steven L. Nelson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, and Michael J. Shortley, III, Rochester, New York, for amicus curiae Frontier Communications of Iowa, Inc.

Robert F. Holz, Jr. and Steven L. Nelson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for amicus curiae Iowa Telecommunications Association.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This appeal concerns the legality of a Hawarden city ordinance that assesses a percentage-of-revenue fee for the use of public property, including utility rights-of-way. An affected utility, US West Communications, Inc., claimed the ordinance violates state and

federal regulatory schemes governing telephone utilities, and the fee amounts to an unauthorized tax. The district court agreed with the utility and dismissed the city's suit to enforce the fee. For the reasons that follow, we affirm.

The parties have stipulated to the operative facts. US West and its predecessors have continuously operated a telephone exchange in the City of Hawarden for more than a century. The utility also holds a certificate of public convenience and necessity issued by the Iowa Utilities Board to furnish local land-line telephone service. *See* Iowa Code § 476.29(1) (1997).

In 1994, the city's residents approved the establishment of a municipal cable communication utility through which it intends to furnish telephone and other communication services. By resolution passed in the following year, the city terminated its franchise with US West and directed it to remove all its equipment, machinery, lines, cables, etc., from the public rights-of-way, streets and property belonging to the city. The city then passed ordinance 549, requiring the payment of a "user fee" of three percent of the gross revenues of any nonmunicipal utility operating within the city. It is undisputed that the franchise fee will generate revenue over and above any expense incident to the city's administrative or regulatory costs. The excess revenue, characterized by the city as rent, will be deposited in the city's general fund, available for any purpose.

US West has resisted the city's efforts to eject it from the city's rights-of-way and has contested the city's right to collect a franchise fee based on revenues generated by the company. The city eventually sued US West. It sought a judgment "equal to all

payments which have not been made as required by said Ordinance No. 549," as well as an order requiring the utility to vacate all public property in the city. The district court denied the relief sought by the city, and this appeal by the city followed.

■ I. This law action was tried to the court on stipulated facts. Our appellate review, therefore, is limited to assigned error in the trial court's application of law pertinent to the controversy. *Iowa Tel. Ass'n v. City of Hawarden*, 589 N.W.2d 245, 250 (Iowa 1999); *Goodell v. Humboldt County*, 575 N.W.2d 486, 491 (Iowa 1998).

II. In their appellate briefs the parties initially debated whether the city could even require US West to secure a franchise. We learned during oral argument that this matter has evidently been resolved. The parties agree the only remaining question is whether, and on what terms, a franchise *fee* may be imposed.

At the outset US West concedes that the city has the authority to regulate a utility's use of streets, highways, rights-of-way and other public grounds within the city limits to the extent not inconsistent with federal communication law or authority vested in the Iowa Utilities Board. This police power is specifically reserved to the cities in Iowa Code section 476.29(6) and 47 U.S.C. § 253.[1] Implicit in this regulatory power, US West concedes, is the authority to charge and receive a reasonable fee to cover the administrative cost of inspection and supervision. *See* Iowa Code §§ 364.2(4)(a) (authorizing city to grant franchise for utility service, including telephone); 364.2(4)(f) (limiting collection of "city franchise fee" where city is customer).[2]

---

1. Section 476.29(6) provides:
   The certificate and tariffs approved by the board are the only authority required for the utility to furnish land-line local telephone service. *However, to the extent not inconsistent with this section, the power to regulate the conditions required and manner of use of the highways, streets, rights-of-way, and public grounds remains in the appropriate public authority.*
   (Emphasis added.) The federal Telecommunications Act of 1996, which prohibits state or local regulations having the effect of barring any entity from providing telecommunication services, states in pertinent part:

   Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.
   47 U.S.C. § 253(c).

2. We note that subsequent to this litigation the legislature amended § 364.2(4)(a) to omit "telephone" from the list of utilities for which a city

Here, however, the record reveals the city's proposed fee is related, not to the expense of regulation or any special benefit conferred on the utility, but to gross revenues generated by the utility. Viewed in this light, the district court held, the fee is actually a revenue generating measure, *i.e.,* a tax. *See Solberg v. Davenport,* 211 Iowa 612, 617–19, 232 N.W. 477, 480, 481 (1930) (license fees exacted in excess of expense incurred for inspection, regulation and supervision are revenue measures arising from taxing power not police power); *Newman v. City of Indianola,* 232 N.W.2d 568, 573 (Iowa 1975) (tax equals charge to pay cost of government without regard to special benefits conferred); *In re Trust of Shurtz,* 242 Iowa 448, 454, 46 N.W.2d 559, 562 (1951) (same); *see also City of Pella v. Fowler,* 215 Iowa 90, 98, 244 N.W. 734, 738 (1932) (city's police power to impose regulatory fees limited to reasonable cost of enforcement).

■ The city readily concedes it has no power to tax the utility. It is prevented, both by constitutional mandate and statutory preemption, from doing so without legislative authorization. Iowa Const. art. III, § 38A; Iowa Code § 364.3(4). It contends on appeal that what the court has described as a tax is, in fact, *rent,* legitimately charged for the commercial use of public property. The city's argument, however, is identical to one this court rejected over eighty years ago in *City of Des Moines v. Iowa Telephone Co.,* 181 Iowa 1282, 162 N.W. 323 (1917). Then, as now, the city argued its right to charge rent for the space occupied by the telephone company's poles, wires, and other equipment. It sued for the right to enforce its ordinance and collect the rental due. *City of Des Moines,* 181 Iowa at 1284, 162 N.W. at 324. The telephone company claimed statutory authorization to occupy the city's streets and alleys, free of charge, subject to the city's police power to regulate the installation and maintenance of the facilities. *Id.* at 1284–87, 162 N.W. at 324–25. It relied on the following legislative authorization which remains

virtually unchanged (but for renumbering) today:

[A]ny person or company may construct a telegraph or telephone line along the public highways of this state, or across the rivers or over any lands belonging to the state or to any private individual, and may erect the necessary fixtures therefore: Provided, that when any highway along which said line has been constructed shall be changed, said person or company shall, upon ninety days' notice in writing, remove said line to said highway as established.... Such fixtures must not be so constructed as to incommode the public in the use of any highway or the navigation of any stream; nor shall they be set up on the private grounds of any individual without paying him a just equivalent for the damages he thereby sustains.

*Id.* at 1285, 162 N.W. at 324 (quoting McClain's Annotated Code 1882, at 374, 375; Code of 1873, as amended by 1882 Iowa Acts ch. 104); *accord* Iowa Code §§ 477.1, .3.

In *City of Des Moines,* this court rejected the city's contention that it owns title to its streets in fee and therefore holds the right, as any private party, to exact rental for their use. The court made plain the city holds the fee *in trust* for the public. "[I]t is a mistake," this court said, "to suppose that, where the fee of the streets is in the city, in trust for the public, the city is constitutionally and necessarily entitled to compensation the same as a private proprietor holding the fee." *City of Des Moines,* 181 Iowa at 1291, 162 N.W. at 326. In short, this court held the above-quoted statute constituted a grant of legislative authority and "under no theory is the city entitled to recover from the telephone company the rental value of its streets used by said company with its poles and wires." *Id.* at 1311, 162 N.W. at 331.

■ III. That brings us to the heart of the parties' disagreement. The city contends that old cases and longstanding statutes must be interpreted in the light of new technolo-

---

franchise may be granted. *See* 1998 Iowa Acts ch. 1148, § 1(a) (now codified at Iowa Code § 364.2(4)(a) (1999)). The same legislation also added a new section restricting a local government from recovering "any fee from a public

utility for the use of its rights-of-way, other than a fee for its management costs," subject to the parties' obligations under franchise agreements already in existence. *See id.* §§ 5, 8 (now codified at Iowa Code §§ 480A.3, .6).

gies, an environment of increased competition, and a municipal authority freed by the advent of home rule. US West counters that the principles underlying the *City of Des Moines* case are consistent with state and federal statutory schemes governing telephone utilities today, as well as modern decisions interpreting those statutes, and were properly applied by the district court. We agree.

To the extent that Hawarden's ordinance 549 purports to require a revenue-based "user fee" as a prerequisite to providing telephone service in Hawarden, it conflicts with Iowa Code sections 476.29(6), 477.1 and .3, as well as the Telecommunications Act of 1996. Section 476.29(6) states that the "only" authority required for a utility to provide local telephone service is a certificate of public convenience and necessity, with tariffs approved by the Iowa Utilities Board. Section 477.1 grants the utility an easement to install its equipment along public roads, while subsection (3) directs payment for such easements when installation occurs on *private* property. Whereas ordinance 549 purports to exempt city utilities from paying the user fee imposed on private entities, the federal act requires that any fees exacted from telecommunication providers be "competitively neutral and nondiscriminatory." 47 U.S.C. § 253(c).

The important interplay between these laws in the modern era has been considered at length by other courts. The city's case is weakened, however, by its heavy reliance on cases adjudicating a municipality's right to assess percentage-of-revenue franchise fees in connection with distinctly different statutory schemes governing utilities other than telephone systems. *See, e.g., City of Dallas v. Federal Communications Comm'n,* 118 F.3d 393, 398–99 (5th Cir.1997) (calculation under state statute permitting maximum five percent franchise fee on cable television operator's gross revenues pursuant to federal statute must include all subscribers' fees); *City of Ames v. Heritage Communications,* 861 F.2d 185, 187 (8th Cir.1988) (where cable television operator uses city facilities to run wires and carry signals to university residence halls, city may collect three percent

franchise fee authorized by Cable Communications Policy Act, 47 U.S.C. § 542(a)); *Santa Barbara County Taxpayers Ass'n v. Board of Supervisors,* 209 Cal.App.3d 940, 257 Cal.Rptr. 615, 620 (1989) (distinguishing between taxable funds subject to state appropriations limit and franchise fees granted for gas, electricity, and cable television); *Santa Rosa County v. Gulf Power Co.,* 635 So.2d 96, 101, 103 (Fla.Dist.Ct.App.1994) (court found city percentage-of-revenue franchise fee imposed on electrical utility not an impermissible tax; such fees against telephone service providers preempted by statute). More pertinent to the question before us are two recent decisions, *American Telephone & Telegraph Co. v. Village of Arlington Heights,* 156 Ill.2d 399, 189 Ill.Dec. 723, 620 N.E.2d 1040 (1993), and *Diginet, Inc. v. Western Union ATS, Inc.,* 958 F.2d 1388 (7th Cir.1992), which involve cities' attempts to impose revenue-based fees on telephone service providers. We shall examine them briefly.

The *Arlington Heights* case, like the one before us, involved attempts by several towns in the northern Illinois suburbs to impose "franchise agreements or tolls" on AT&T for the right to lay eighty-five miles of underground fiber optic cable. AT&T refused to pay. *Village of Arlington Heights,* 189 Ill. Dec. 723, 620 N.E.2d at 1042. The Illinois Supreme Court upheld AT&T's resistance, noting—as did this court in *City of Des Moines*—that public streets are held in trust for public use and a city's regulatory powers over them do not include the authority to charge rent for their use. *Id.,* 189 Ill.Dec. 723, 620 N.E.2d at 1044. The court held that if each of several governmental units had the power to exact tolls for conduit installed over and under city streets, "the effect would amount to legalized extortion and a crippling of communication and commerce as we know it." *Id.*

Similar concern was expressed in the *Diginet* case. There, as here, the question was whether the City of Chicago could impose a percentage-of-revenue user fee for the telephone utility's right to activate a fiber optic network under sixteen miles of Chicago's city streets. *Diginet,* 958 F.2d at 1391. The city

made no pretense that the fee was other than a revenue-generating measure; indeed, the court could find no proof of costs imposed on the city by installation of the fiber optic network. *Id.* at 1392. Noting that the city could not circumvent limitations on its taxing authority "by calling a tax something else, such as a 'franchise fee,'" the court adopted the following functional test:

> If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power. If it is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation.

*Id.* at 1399. Addressing the question of whether modern telecommunication systems could withstand such ordinances, the court said:

> If municipalities such as Chicago can use their control over the public ways to extract fees unrelated to costs from telephone and other right of way companies, the provision of telephone and other utility-type services may be disrupted. To run a cable across the state a telephone company might have to cross a hundred municipal boundaries, and at each one ... it could be held up for a monopoly toll, as if Illinois's municipalities were so many little medieval German principalities.

*Id.* at 1400.

The sound reasoning of the foregoing cases persuades us that the district court correctly recognized Hawarden's "user fee" for what it is—a revenue-generating measure—and properly determined that, whether characterized as a "tax" or "rent," the city is without authority to impose such a fee for use of public easements granted by the state. Significantly, these contemporary decisions reflect the same policy considerations expressed by this court in 1917:

> The difficulties here presented and the supposed injustice resulting are not due to the courts, but to the Legislature, and primarily to the people themselves. In the early history of every city and state in this age of scientific development and discovery new and important devices intended for the use and benefit of the people are eagerly sought after and generally encouraged. In their infancy these utilities seem to need the fostering care of the state or of its municipalities. The people of both the state and its instrumentalities are anxious to secure the advantage of these improvements, and so they offer all sorts of inducements and grant them most favorable franchises in order that they may keep up with the times. They have little concern about the future, and so in order to secure immediate benefits they use their powers most liberally and grant favors and bonuses without stint. Ofttimes, too, this has been necessary in order to induce the investment of capital. This has happened with reference to railroads, telephones, and telegraphs, waterworks, and various other utilities which might be mentioned. The writer well remembers the advent of the telephone, and has watched its growth. First is was purely a local affair, then short lines connected some of the towns, and finally it spread over the entire country, so that it is now possible for one in New York to talk with another in San Francisco. In the early days every town wanted an exchange; next it wanted toll lines connecting its exchange with other exchanges in neighboring towns. Every one wanted a phone. At this stage the Legislature was appealed to, and no one thought at that time of charging for the use of poles or wires upon either public highways or streets. The main thing was to secure them and to get capital wherewith to procure them. No one it seems could foresee the tremendous development of this industry, and so the Legislature passed the act giving the telephone companies the right to construct their poles and wires over and along every highway and street in the state in order to encourage their development. Capital was invested on this basis, and the business has become very large. Now it appears that these grants and franchises were valuable, and the use of the streets and public highways is thought to be worth something.

In this situation attempt is being made to collect rentals for the use thereof. It is a clear case of hindsight and not foresight; but courts are confined to a definition of rights under the original grants, save as these may be modified under the reserved power of the state.

*City of Des Moines,* 181 Iowa at 1311–12, 162 N.W. at 332.

 The district court also correctly recognized that the municipality may recover a fee for managing its public rights-of-way but, under the Telecommunications Act of 1996, such compensation must be "reasonable" and imposed on a "competitively neutral and nondiscriminatory basis." *See* 47 U.S.C. § 253(c). It would unduly lengthen this opinion to further elaborate on the obvious conclusion that the fee proposed by ordinance 549—imposed without regard to administrative costs and exempting the city, as a telecommunications provider, from its coverage—is neither reasonable nor nondiscriminatory in its application. We therefore affirm the district court's dismissal of the city's action to enforce the ordinance.

**AFFIRMED.**