No. 01-862

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 332

MONTANA-DAKOTA UTILITIES CO., a Division of
MDU RESOURCES GROUP, INC.; THE MONTANA
POWER COMPANY; and YELLOWSTONE VALLEY
ELECTRIC COOPERATIVE, INC.,

        Plaintiffs and Respondents,

   and

TOUCH AMERICA, INC.,

        Intervenor and Respondent,

   v.

THE CITY OF BILLINGS, MONTANA,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DV 2001-0022,
                 Honorable G. Todd Baugh, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

           Brent Brooks, City Attorney, Billings, Montana

           Joseph Van Eaton (argued), Miller & Van Eaton, P.L.L.C.,
           Washington, D.C.

       For Respondents:

           Elizabeth Baker (argued) and John Alke, Hughes, Kellner, Sullivan & Alke,
           Helena, Montana

           Patrick T. Fleming, Butte, Montana (Intervenor)

For Amici:

David L. Nielsen, City Attorney, Helena, Montana
(Montana League of Cities and Towns)

Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, Great Falls,
Montana Electric Cooperatives Ass'n; Montana Independent
Telecommunications System; and Montana Telecommunications Ass'n

Argued:  September 17, 2002
Submitted:  October 23, 2002
Decided:  December 3, 2003

Filed:

_____
Clerk

2

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Public utilities and telecommunications corporations with transmission lines, cables, pipelines or other facilities located within public rights-of-way challenge a franchise fee established by ordinance in Billings, Montana. The Thirteenth Judicial District Court, Yellowstone County, held that the franchise fee constitutes an illegal tax. We affirm.

¶2 The issue on appeal is whether a franchise fee based on 4 percent of gross annual revenue generated by each utility that occupies the public rights-of-way within the city constitutes a tax on the sale of utility services?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 23, 2000, the Billings City Council adopted Ordinance No. 00-5133, entitled the "City of Billings Right-of-Way Management Ordinance" ("the ordinance"). The stated purpose of the ordinance was to protect the public rights-of-way within the city against damage and unauthorized encroachment; minimize public inconvenience during utility emplacement or maintenance; recover the costs of regulation and oversight; recover fair compensation for the occupation of the rights-of-way; and prevent premature exhaustion of the right-of-way capacity to accommodate telecommunications, utilities and other public services. To accomplish these goals, the ordinance set forth a comprehensive regulatory scheme for leasing city-owned property, licensing non-governmental entities whose facilities pass through the rights-of-way and executing franchise agreements with businesses that occupy the rights-of-way to service customers within the city. Under the ordinance, each lessee, licensee and franchisee must obtain a work permit, post a performance bond, secure

3

insurance and comply with the various notice provisions of the ordinance before entering city-controlled property to install or maintain facilities. Each must also pay fees in accordance with (1) a lease of city property based on fair market rent, (2) a pass-through license based on a per-foot annual assessment, or (3) a franchise fee based on 4 percent of gross annual revenues received from the provision of telecommunications or utility services within the city. Under the ordinance, operative franchise contracts remain valid and enforceable for the terms of the existing agreements.

¶4 Montana Dakota Utilities (MDU), Montana Power Company and Yellowstone Valley Electric Cooperative (collectively, "the Utilities") filed an Amended Complaint on February 1, 2001. The Utilities challenged the franchise fee provisions of the ordinance as an illegal tax on the sale of their services within the city and sought a declaratory judgment. Touch America, Inc., intervened as a plaintiff without objection. By stipulation, the parties agreed that MDU would not be required to file a franchise application required by the ordinance until its 25-year franchise agreement with the City of Billings (hereafter "the City") expires in 2004. The City Council delayed enforcement of the ordinance pending the resolution of the legal challenge in the District Court.

¶5 On cross-motions for summary judgment, the District Court ruled on September 20, 2001, that the ordinance's franchise fee constituted an unlawful tax. The court also held that the franchise fee provisions of the ordinance were severable from the provisions that otherwise regulated use of the public rights-of-way in the City. However, a successful initiative drive placed the ordinance on the November 2001 ballot, and Billings voters

4

rejected the measure by a margin of 58 to 42 percent. The City filed a timely appeal, and oral argument was heard before this Court on September 17, 2002.

## STANDARD OF REVIEW

¶6 Our standard of review on appeal from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. We apply the same evaluation as the district court based on Rule 56, M.R.Civ.P., and *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

¶7 This Court normally does not address moot questions, i.e., questions that once existed but no longer present an actual controversy. *Lewistown Propane Co. v. Moncur*, 2002 MT 349, ¶ 14, 313 Mont. 368, ¶ 14, 61 P.3d 780, ¶ 14 (citation omitted). Although voter rejection of the ordinance in November 2001 mooted issues concerning the legal validity of that measure, the Utilities urge this Court to accept jurisdiction under the exception for issues which are capable of repetition yet avoid review. The Utilities cite *Skinner Enterprises, Inc. v. Lewis & Clark City-County Health Dept.*, 1999 MT 106, 294 Mont. 310, 980 P.2d 1049, in which we set forth a two-part burden that the party invoking the exception must shoulder: (1) the challenged action must be too short in duration to be fully litigated prior to cessation; and (2) there must be a reasonable expectation that the same complaining party would be

5

subject to the same action again. *Skinner*, ¶ 18 (citing *Heisler v. Hines Motor Co*. (1997), 282 Mont. 270, 275-76, 937 P.2d 45, 48).

¶8     The Utilities point out that the Billings City Council passed an ordinance in 1992 that incorporated franchise fee provisions similar to those charged by the ordinance subject to this appeal. When a referendum drive placed the 1992 ordinance before the voters, the City withdrew the measure. In the case before us today, Billings voters disapproved the ordinance about six weeks after the District Court ruled the franchise fee provisions illegal, but before this Court had an opportunity to address the City's appeal. The Utilities assert that, in the absence of a final determination by this Court of the fee's legality, the City may again bring forth a similar local ordinance that impresses a franchise fee upon utilities.

¶9     We have consistently held that the existence of a justiciable controversy is a threshold requirement to a court's granting relief. *Powder River County v. State,* 2002 MT 259, ¶ 101, 312 Mont. 198, ¶ 101, 60 P.3d 357, ¶ 101 (citing *Shamrock Motors, Inc. v. Ford Motor Co.,* 1999 MT 21, ¶¶ 17-19, 293 Mont. 188, ¶¶ 17-19, 974 P.2d 1150, ¶¶ 17-19). The test for a justiciable controversy consists of three elements: (1) the parties have existing and genuine, as distinguished from theoretical, rights or interests; (2) the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion; and (3) there must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding

6

public moment as to constitute the legal equivalent of all of them. *Powder River County*, ¶ 102 (citing *Northfield Ins. Co. v. Montana Ass'n of Counties,* 2000 MT 256, ¶ 12, 301 Mont. 472, ¶ 12, 10 P.3d 813, ¶ 12 ).

¶10   The franchise fee provision of the ordinance under consideration presents the issue of whether the fee violates Montana's statutory prohibition against local governments imposing a tax on the sale of goods and services, § 7-1-112(1), MCA. When certain public utilities were released from monopoly regulation by state and federal governments during recent years, local governments re-evaluated their practice of granting franchises for utility use and occupation of city streets and alleys at no cost. *See*, Roger D. Colton and Michael F. Sheehan, *Raising Local Government Revenue Through Utility Franchise Charges: If the Fee Fits, Foot It*, 21 Urb. Law. 55 (1989); Clarence A. West, *The Information Highway Must Pay Its Way Through Cities: A Discussion of the Authority of State and Local Governments to be Compensated For the Use of Public Rights-of-Way*, Mich. Telecomm. & Tech. L. Rev. 29 (1994-95). Given the inclination of Montana's local government leaders to exploit potential new sources of revenue, we anticipate the question of whether the Montana Legislature has checked the power of local governments to charge franchise fees will, in the absence of appellate review, arise again. Franchise law is relatively undeveloped in Montana. However, this case may be resolved on the basis of statutory interpretation. We conclude that appellate review of the franchise fee controversy will have the effect of a final judgment in law regarding the rights of local governments and utilities and is appropriate at this time.

7

¶11    In accepting jurisdiction, we limit our review to the issue of whether the ordinance's franchise fee constitutes an illegal tax, proscribed by § 7-1-112(1), MCA.

¶12    **Is a franchise fee based on 4 percent of gross annual revenue generated by each utility that occupies the public rights-of-way within the City a tax on the sale of utility services?**

¶13    A franchise is a "special privilege in the streets, highways, and public places of the city, whether granted by the state or the city, which does not belong to citizens generally by common right." Section 7-3-4201(3), MCA. Since the nineteenth century, state and local governments in Montana have granted franchises to private or public corporations for the construction and maintenance of infrastructures within the public rights-of-way to provide essential services to the public. *See Davenport v. Kleinschmidt* (1887), 6 Mont. 502, 13 P. 249 (water franchise); *Hershfield v. Rocky Mt. B. T. Co*. (1892), 12 Mont. 102, 29 P. 883 (telephone franchise); *State ex rel. Deeney v. Butte Elec. & Power Co*. (1911), 43 Mont. 118, 115 P. 44 (grant of electric franchise does not grant right to provide gas service); *State ex rel. City of Billings v. Billings Gas Co.* (1918), 55 Mont. 102, 173 P. 799 (gas franchise); *City of Helena v. Helena Light & Ry. Co*. (1922), 63 Mont. 108, 207 P. 337 (street railroad franchise).

¶14    This Court characterized a franchise as property that "is incorporeal and intangible in its nature." *Glodt v. City of Missoula* (1948), 121 Mont. 178, 183, 190 P.2d 545, 547.

A franchise is the special privilege awarded by government to a person or corporation and conveys a valuable property right.[1]

¶15 The City is a municipal corporation with its own governmental charter. A local government under a self-government charter may exercise any power not prohibited by the Montana Constitution, state law or its own charter. Art. XI, Sec. 6, Mont. Const. (1972); § 7-1-101, MCA. Section 7-1-106, MCA, further states:

> The powers and authority of a local government unit with self-government powers shall be liberally construed. Every reasonable doubt as to the existence of a local government power or authority shall be resolved in favor of the existence of that power or authority.

¶16 Only by express statutory prohibition does Montana law preempt a self-governing municipality from acting in a certain area. *D & F Sanitation v. City of Billings* (1986), 219 Mont. 437, 445, 713 P.2d 977, 982. The statutory prohibition pertinent to the resolution of this case, § 7-1-112, MCA, limits the authority of local government as follows:

> A local government with self-government powers is prohibited the exercise of the following powers unless the power is specifically delegated by law:
> (1) the power to authorize a tax on income or the sale of goods or services . . . .

¶17 The District Court held that the franchise fee that the City sought to charge the Utilities by ordinance was an illegal tax on the sale of services provided within city limits. The court reviewed three cases in which this Court construed § 7-1-112(1), MCA, and

---

[1] Although incorporeal, franchises historically were subject to taxation, Art. XII, Sec. 17, Mont. Const. (1889), until intangible property became fully exempt from taxation in 2002, pursuant to § 15-6-218, MCA (1999).

distinguished permissible municipal fees from illegal taxes. An analysis of those cases follows.

¶18    *Montana Innkeepers Assoc. v. City of Billings* (1983), 206 Mont. 425, 671 P.2d 21, involved a $1.00 fee imposed by the City on adults for each day of hotel or motel occupancy in the City. Although the City charged the occupants and not the businesses, this Court concluded that the fee imposed an illegal tax on the sale of temporary lodging. *Montana Innkeepers,* 206 Mont. at 430, 671 P.2d at 23.

¶19    In *Brueggemann v. City of Billings* (1986), 221 Mont. 375, 719 P.2d 768, we examined an ordinance subjecting every lawyer or law firm practicing within the City to an annual licensing fee based on gross revenue generated by the attorneys. Because the fee was unrelated to any regulation of the local bar association by the City, this Court characterized the fee as an impermissible sales tax on attorney services. *Brueggemann*, 221 Mont. at 378, 719 P.2d at 770.

¶20    The District Court also compared the franchise fee to municipal fees charged to developers for new hook-ups to a city's sewer and water systems. This Court earlier upheld such municipal fees as a legal exercise of a city's self-governing powers. *Lechner v. City of Billings* (1990), 244 Mont. 195, 797 P.2d 191. In *Lechner*, the City placed the collected fees in a special account earmarked for sewer and water system improvement. We reasoned in *Lechner* that the new homeowners, churches, schools and businesses that generated the need for additional water and sewer capacity directly benefitted from the expenditure of the development fees for system expansion. *Lechner*, 244 Mont. at 199, 797 P.2d at 208.

Rather than a tax "levied for the general public good," the fees were "imposed for the benefit of new users of the water and sewer facilities whose use of these systems gives rise to the need for the additional water and sewer capacity." *Lechner,* 244 Mont. at 199, 797 P.2d at 208. In contrast to the fee in *Montana Innkeepers,* the fee in *Lechner* was "directly related to the City's authority to regulate municipal utilities." We noted that the revenues were placed in a special fund earmarked for expanding the City's water and sewer facilities. *Lechner,* 244 Mont. at 199, 797 P.2d at 208. Contrary to the City's contention, *Lechner* did not draw the broad conclusion that the constitution permits localities to charge fees and rents. Rather, *Lechner* upheld the fee as reasonably related to the regulatory purpose for which it would be used.

¶21 The purpose of the water and sewer fee set *Lechner* apart from *Montana Innkeepers* and *Brueggemann*. The *Lechner* decision involved a classic regulatory fee, charged to those who requested a new service, grounded in the cost of providing that service. Furthermore, the fee was used for regulatory purposes. The taxes in *Montana Innkeepers* and *Brueggemann* were, in contrast, based upon a business transaction.

¶22 In the case at hand, the District Court noted that the fees to be collected from franchisees in the City were not earmarked for right-of-way maintenance or regulation but would be used to reduce general property taxes and to fund transportation improvement projects, public safety operations and park maintenance. The court determined that, unlike the property owners in *Lechner* who benefited from the development fee that increased the cost of their new building, the Utilities would receive no direct benefit from a franchise fee

11

that the City planned to deposit in the general fund account. The court also concluded that a franchise fee based on gross revenue constituted a charge placed on the Utilities' business transactions that was similar to the illegal fees exacted in *Montana Innkeepers* and *Brueggemann*.

¶23 The court employed the three-part test set forth in *City of Lakewood v. Pierce County* (Wash.Ct.App. 2001), 23 P.3d 1, to determine whether the City's franchise fee constituted a sales tax. The Washington Court held: "[I]f the charges are intended to raise money, they are taxes; if the charges are primarily tools of regulation, they are not taxes." *Lakewood*, 23 P.3d at 7. It reasoned that regulatory fees are assessed to address problems caused by those who are required to pay the fees and, as long as that nexus exists, the authority to charge fees comes within the police powers of the city. The *Lakewood* test distinguishes a regulatory franchise fee from a tax on the following grounds: (1) whether the primary purpose is to raise revenue or to regulate; (2) whether the money collected is allocated only to the authorized regulatory purpose; and (3) whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee-payer. *Lakewood*, 23 P.3d at 7.

¶24 By applying the *Lakewood* test to the City's franchise fee, the District Court determined: (1) the primary purpose of the ordinance was to raise revenue; (2) the money collected would be placed in the general fund and was not allocated to any specific regulatory activity, such as managing and maintaining the public rights-of-way; and (3) the relationship between the fee charged and the services rendered or burden imposed upon the

12

public rights-of-way was uncertain. The court also noted that the City's franchise fee was not subject to negotiation but imposed on the Utilities unilaterally by ordinance. Because the City planned to collect franchise fees as a revenue-generator and would not deposit the fees in a special account for right-of-way maintenance or regulation, the court concluded that the fee was a tax.

¶25 This Court has held that a governmental demand for money made for the purpose of raising revenue is a tax. *State ex rel. State Aeronautics Comm'n v. Bd. of Exam.* (1948), 121 Mont. 402, 407-08, 194 P.2d 633, 636-37, overruled on other grounds by *Bd. of Regents v. Judge* (1975), 168 Mont. 433, 445, 543 P.2d 1323, 1330. *Brueggemann, Montana Innkeepers* and *Lechner* honor the rule that "[i]f charges are primarily to raise money, they are taxes. If the charges are primarily tools of regulation, they are not taxes." 16 E. McQuillin, *Municipal Corporations*, Sec. 44.02 at 2 (3rd ed., supp. 2003).

¶26 In the present case, the gross revenue fee is separate and apart from the City's police power over public streets and alleys. Section 12 of the ordinance defines "gross revenue" as the compensation received from the provision of telecommunications services or utility services, both of which are defined in section 6 as the "offering" of telecommunications, electric power, manufactured or natural gas, or water "for a fee directly to the public." Accordingly, the gross revenue fee, like the taxes in *Montana Innkeepers* and *Brueggemann*, is based exclusively on the sale of a product or service within the City.

¶27 The City contends that the District Court, in limiting its analysis to the question of whether the charge was a "tax" or a " regulatory fee," ignored its contention that the charge

13

was neither a tax nor a fee, but rather a "rent" for a public utility's occupation of the right-of-way. The City, relying on *State ex rel. Malott v. Bd. of County Comm'rs* (1930), 89 Mont. 37, 296 P. 1, contends that a charge is not a tax when it is levied in return for a special benefit. Applying the "*Malott* test" to the present case, the City argues that the gross revenue charge will be paid only in return for the grant of a specific benefit (the franchise) and is therefore not a "tax" but in the nature of "rent."

¶28    We note first of all, that the City's relationship with the public streets and alleys is not that of a traditional proprietor. Under Montana law, the state, not the City, "has ownership and control of all city streets," with local governments as the trustees. *State v. City of Helena* (1981), 193 Mont. 441, 444, 632 P.2d 332, 334. Use of city streets is authorized by statute, § 69-4-101, MCA; § 35-18-106(8), MCA; and § 70-30-102, MCA. Although the City has regulatory authority over its streets, § 7-3-4313, MCA, and § 7-3-4449, MCA, it does not have the power to exclude public utilities. *State ex rel. Rocky Mountain Bell Tel. Co. v. Mayor of City of Red Lodge* (1904), 30 Mont. 338, 346, 76 P. 758, 761. Pursuant to this statutory authority, the Utilities herein have occupied the streets and alleys of the City for many years. As they point out, the fact that they remain subject to the City's police and regulatory powers does not make them "tenants" in the same sense as a private business that, for example, rents space in the City's airport. Furthermore, given that the Utilities occupied the rights-of-way for years prior to enactment of the ordinance, it cannot be said, even under the City's so-called "*Malott* test," that the ordinance conferred any benefit on them that they did not already enjoy.

14

¶29    The City's "rental" theory is also inconsistent with the fact that the gross revenue fee is not tied to a utility's use or occupancy of the public right-of-way. *See XO Missouri, Inc., v. City of Maryland Heights* (E.D.Mo. 2003), 256 F.Supp.2d 987, 993-95 (gross revenues-based charge is not a legitimate fee because not based on regulatory costs or extent of right-of-way use). The fee is imposed on all revenues derived from business conducted within the city limits, regardless of the fact that some utility facilities are located on public right-of-way and some on private easements.

¶30    The City contends that, pursuant to the ordinance, any franchise agreement would be the result of negotiation and relies on our decision in *City of Baker v. Montana Petroleum Co.* (1935), 99 Mont. 465, 44 P.2d 735, for the proposition that a fee paid pursuant to a contract is not a tax.

¶31    In *Baker*, the City of Baker passed a gas franchise ordinance in 1916, imposing a gross receipts-based fee. The utility accepted the terms of the ordinance and installed its gas distribution system shortly thereafter. 99 Mont. at 473, 44 P.2d at 735. It then proceeded to make payments for more than a decade. This Court construed the fee as part of a contract between the parties. "The relationship between the parties with reference to the franchise and its provisions for gross receipts tax is contractual and is to be distinguished, on that ground, from cases of purely revenue producing ordinances calling for license or occupational taxes." 99 Mont. at 476, 44 P.2d at 736. Thus the *Baker* decision involved a utility that was aware of the City of Baker's gas franchise ordinance and chose to accept the terms of the ordinance, construct a gas distribution system and pay the fee for over a decade.

15

The utility was thus estopped from challenging the validity of the fee. *Baker,* 99 Mont. at 482, 44 P.2d at 739. In contrast, the Utilities in the present matter did not install and operate their systems knowing that the City had established a franchise fee. Rather, since the Utilities have been occupying the rights-of-way for years prior to enactment of the ordinance, it cannot be said that they negotiated or accepted the terms of the ordinance. *See Florida Power Corp. v. City of Winter Park* (Fla.Dist.App. 2002), 827 So.2d 322, 323 n.1, 324 n.2. Given that the City unilaterally imposed the fee on utilities whose occupancy of the right-of-way predated the ordinance, the relationship between the parties was not "contractual" and, for that reason, is distinguishable from *City of Baker*.

¶32    The Utilities have cited us to a number of decisions from other jurisdictions for the proposition that a revenue-producing, nonregulatory fee is a tax. In *St. Louis v. Western Union Tel.Co.* (1893), 148 U.S. 92, 13 S.Ct. 487, 37 L.Ed. 380, the Court held that, "the power to require payment of some reasonable sum for the exclusive use of a portion of the streets was within the grant of power to regulate the use." The $5.00 per telephone pole fee did not have the characteristics of a tax: "The amount to be paid is not graduated by the amount of the business, nor is it a sum fixed for the privilege of doing business. It is more in the nature of a charge for the use of property belonging to the city." 148 U.S. at 97, 13 S.Ct. at 487, 37 L.Ed. at 383. In *Western Union Telegraph Co. v. New Hope* (1903), 187 U.S. 419, 427, 23 S.Ct. 204, 205, 47 L.Ed. 240, 244, the Court upheld a municipal fee of $1.00 per telegraph pole and $2.50 per mile of wire on the ground that the fee was "a charge in the enforcement of local government supervision" as opposed to a tax "on the property

of the company, or on its transmission of messages, or on its receipts from such transmissions, or on its occupation of business[.]"  In *Postal Telegraph-Cable Co. v. Taylor* (1904), 192 U.S. 64, 72, 24 S.Ct. 208, 211, 48 L.Ed. 342, 346, the Court struck a city fee that was "mere subterfuge" for raising revenue, not tied to the city's regulatory costs.

¶33    The District Court relied on a decision by the Florida Supreme Court in *Alachua County v. State* (Fla. 1999), 737 So.2d 1065, where the court struck the county's 3 percent gross revenue "electric utility privilege fee" on the ground that it was in reality a tax. Despite the county's home-rule powers, the court found that the fee was not a reasonable rental charge or legitimate franchise fee, but a "forced charge on the utilities." *Alachua County*, 737 So.2d at 1069.  Although the county had argued "that the fee was a reasonable rental fee, a user fee, or a franchise fee," the record showed that the fee was unrelated to regulatory costs or the extent of right-of-way use and was designed to fund general county operations and to reduce the county ad valorem tax millage rate. *Alachua County*, 737 So.2d at 1067.

¶34    In *City of Hawarden v. US West Communications, Inc.* (Iowa 1999), 590 N.W.2d 504, the Iowa Supreme Court considered a 3 percent gross revenue "user fee" on public utilities, imposed after US West had operated a telephone exchange in the city for more than a century. The fee was "related, not to the expense of regulation or any special benefit conferred on the utility, but to gross revenues generated by the utility."  *Hawarden*, 590 N.W.2d at 507.   The court rejected the city's argument that the fee was in fact rent "legitimately charged for the commercial use of public property." *Hawarden*, 590 N.W.2d

17

at 507. The city's home-rule powers did not change longstanding state law that the city held the fee to its streets in trust for the public and lacked authority to exact a rental for their use by public utilities. The Iowa court recognized the city's fee "for what it is–a revenue-generating measure." *Hawarden*, 590 N.W.2d at 509. It concluded that, "[w]hether characterized as a 'tax' or 'rent,' the city is without authority to impose such a fee for use of public easements granted by the state." *Hawarden,* 590 N.W.2d at 509.

¶35    We conclude that a unilaterally imposed, revenue-generating gross-revenue fee, unrelated to use or occupancy of the right-of-way, is a tax on goods or services in violation of § 7-1-112(1), MCA.

¶36    Finally, the City asserts that the District Court erred in holding that only three "regulatory provisions" of the ordinance were severable from the invalid franchise fee provision. It is the City's position that, if the Court concludes that the franchise fee is an invalid tax on the sale of services, all other provisions of the ordinance should be treated as severable. The Utilities contend that the severability issue is moot now that the ordinance has been defeated and cannot be enacted for two years. Unlike the franchise fee provision which, having been subject to prior enactments, is capable of repetition yet evading review, *Heisler,* 282 Mont. at 275, 937 P.2d at 48 (citation omitted),  the other provisions of the ordinance have not been the subject of repeated attempts at enactment. We agree with the Utilities that it is too speculative to conclude that they will, in years to come, be subject to these same regulatory provisions with no ability to test their validity in court. Accordingly,

18

now that the ordinance has been defeated, the severability issue is moot. Likewise, the issue as to whether the District Court should have declared the fee reasonable is now moot.

¶37    Affirmed.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JIM RICE

/S/ MICHAEL C. PREZEAU
Honorable Michael C. Prezeau, District
Judge, sitting in place of Chief Justice Gray

Justice Patricia O. Cotter dissents.

¶38     The City of Billings operates under a self-government charter.  This being so, the City may exercise any power or provide any service except those that are specifically prohibited by the Constitution, state law, or the charter itself.  Section 7-1-102, MCA; *D & F Sanitation v. City of Billings*, 219 Mont. 437, 435, 713 P.2d 977 (1986).  Moreover, as the Court points out at ¶ 15, Section 7-1-106, MCA, provides in part that "every reasonable doubt" as to the existence of a local government power or authority should be resolved in favor of its existence.  Thus, the utilities must demonstrate beyond a reasonable doubt that there is an express, and not implied, constitutional, statutory, or charter prohibition against the power which the City seeks to exercise. The utilities have not pointed to either a constitutional or a charter prohibition against the challenged fee.  Therefore, they must demonstrate beyond a reasonable doubt that a state statute prohibits the imposition of the challenged fee.  I would conclude that the utilities have failed to carry this burden.

¶39     The City has established that there is a contractual relationship between it and the utilities that benefits both parties.  The utilities do not dispute the right of the City to enter into the franchise agreement with them nor do they argue that the City is prohibited from charging franchise fees.   Finally, there is no express statutory limitation on the right of municipalities to generate income from contractual agreements involving the public right of way.  All this being so, this is simply a fee that has been imposed pursuant to the City's contractual grant of a special right.  I would evaluate the fee in the context of the City's right to enter contracts, which is a right *without* statutory limitation, and not in the context of the

20

"tax on the sale of goods and services," as the Court has done here. The mere fact that the fee is called a "franchise fee" does not convert this otherwise valid exercise of the power to enter into a contract for a valuable property right, into a prohibited regulatory scheme. In short, I think we have over-analyzed the question.

¶40     I would conclude that the utilities have failed to carry the heavy burden of establishing  beyond a reasonable doubt that this franchise fee, for which valuable consideration has been received by the utilities, is the same as "a tax on income or the sale of goods and services" such as is prohibited in § 7-1-112, MCA. I would therefore reverse the District Court's conclusion that the franchise fee constitutes an illegal tax. I dissent from our refusal to do so.


/S/ PATRICIA COTTER